Robert JOHNSON, Plaintiff-Respondent-Petitioner,

v.

CINTAS CORPORATION No. 2, Defendant-Appellant,
UNITED HEALTHCARE, Defendant.

Supreme Court

*No. 2009AP2549. Oral argument December 1, 2011.*
*—Decided March 27, 2012.*

2012 WI 31

(Also reported in 811 N.W.2d 756.)

494

For the plaintiff-respondent-petitioner there were briefs by *Robert I. DuMez, John V. O'Connor,* and

*O'Connor, DuMez Alia, & McTernan, S.C.,* Kenosha, and oral argument by *John V. O'Connor.*

For the defendant-appellant there was a brief filed by *Terry E. Johnson, Ahndrea R. Van Den Elzen,* and *Peterson, Johnson, & Murray, S.C.,* Milwaukee, and oral argument by *Terry E. Johnson.*

¶ 1. ANNETTE KINGSLAND ZIEGLER, J. This is a review of a published decision of the court of appeals, *Johnson v. Cintas Corp. No. 2,* 2011 WI App 5, 331 Wis. 2d 51, 794 N.W.2d 475, that reversed a default judgment entered by the Kenosha County Circuit Court[1] in favor of Robert Johnson (Johnson) and against Cintas Corporation No. 2 (Cintas No. 2). Because Johnson's summons and complaint did not name Cintas No. 2 as a defendant and instead named Cintas Corporation (Cintas), the parent corporation of Cintas No. 2, the court of appeals concluded that the circuit court lacked personal jurisdiction over Cintas No. 2, and therefore, the default judgment is void. Accordingly, the court of appeals reversed the default judgment and remanded the cause to the circuit court for further proceedings.

¶ 2. On appeal to this court, Johnson argues that the circuit court had personal jurisdiction over Cintas No. 2 because, despite not being named in the summons and complaint, Cintas No. 2 was served with the summons and complaint and was not prejudiced by Johnson's error. Alternatively, Johnson contends that his pleadings ought to be construed as only technically defective on the grounds that Cintas No. 2 held itself out as Cintas.

¶ 3. We disagree with Johnson on both counts and therefore affirm.

---

[1] The Honorable David M. Bastianelli presided.

¶ 4.  We conclude that service in this case was fundamentally defective because Johnson failed to name Cintas No. 2 as a defendant in his summons and complaint, contrary to Wis. Stat. §§ 801.02(1) and 801.09(1). Therefore, the circuit court lacked personal jurisdiction over Cintas No. 2, regardless of whether or not the defect prejudiced Cintas No. 2 and regardless of the manner in which Cintas No. 2 held itself out to the public or to Johnson specifically. Because the circuit court lacked personal jurisdiction over Cintas No. 2, the default judgment entered against Cintas No. 2 is void.

## I. FACTUAL BACKGROUND AND PROCEDURAL POSTURE

¶ 5.  On April 12, 2007, Johnson filed a summons and complaint against Cintas; United Healthcare; Marvin Crandall (Crandall); and XYZ Corporation, a fictitious name designating Crandall's automobile liability insurer.[2] According to his complaint, Johnson was an employee of Cintas and was required to use his personal vehicle in the course of his employment. As a result, Johnson alleged, he had automobile liability insurance coverage through Cintas.

¶ 6.  In his complaint, Johnson alleged that on July 2, 2006, he was riding as a passenger in his own vehicle driven by Crandall with Johnson's permission when Crandall negligently operated the vehicle, causing it to collide with another vehicle. Johnson alleged that as a result of the accident, he was permanently

---

[2] *See* Wis. Stat. § 807.12 (2007–08) (permitting a plaintiff to designate an unknown defendant by a fictitious name until the defendant's true name is ascertained).

All subsequent references to the Wisconsin Statutes are to the 2007–08 version unless otherwise indicated.

injured, experienced pain and suffering, incurred past and future medical expenses, and had a loss of earning capacity.

¶ 7. In addition, Johnson claimed that both he and Crandall qualified as insureds under Cintas's automobile liability insurance coverage and consequently were entitled to benefits payable by Cintas. Cintas's refusal to pay any benefits, according to Johnson, constituted a breach of contract and bad faith.

¶ 8. On April 19, 2007, Johnson served his summons and complaint upon the registered agent for Cintas No. 2, a wholly owned subsidiary of the named defendant, Cintas. Unlike Cintas No. 2, Cintas is neither registered nor licensed to do business in Wisconsin and does not have a registered agent for service of process in Wisconsin. Cintas is a foreign public corporation, incorporated under the laws of Washington with a principal place of business in Ohio.

¶ 9. Neither Cintas nor Cintas No. 2 answered Johnson's complaint. Accordingly, Johnson's counsel filed an affidavit of no answer, and on June 15, 2007, Johnson moved for default judgment against Cintas. Like his summons and complaint, Johnson's motion for default judgment was served upon the registered agent for Cintas No. 2, not Cintas.

¶ 10. On July 2, 2007, Cintas, through its counsel in Illinois,[3] filed an emergency motion to dismiss Johnson's motion for default judgment on the grounds that the circuit court lacked personal jurisdiction over Cintas. Cintas's motion explained that Johnson's em-

---

[3] According to the record before this court, the circuit court was later apprised of the fact that Cintas's counsel appeared before the court without first seeking *pro hac vice* admission as required by SCR 10.03(4)(b).

ployer was actually Cintas No. 2, not Cintas as Johnson had alleged in his complaint. Cintas attached to its motion various corporate records from the Wisconsin Department of Financial Institutions (DFI), showing that Cintas is not a registered corporation in Wisconsin. By contrast, the DFI records reveal that Cintas No. 2, incorporated under the laws of Nevada with a principal place of business in Ohio, is a registered corporation in Wisconsin, as of June 1, 2000. Because Johnson failed to serve his summons and complaint upon Cintas, Cintas argued that the circuit court lacked personal jurisdiction over Cintas and consequently could not enter default judgment against Cintas.

¶ 11. Alternatively, assuming the circuit court found that Cintas was properly served, Cintas maintained that default judgment would still be inappropriate because Cintas's failure to answer was unintentional and because Cintas had a valid defense to Johnson's claims. Specifically, Cintas alleged that the accident that injured Johnson was a result of both Johnson and Crandall being intoxicated.

¶ 12. Three days later, on July 5, 2007, Johnson filed a letter with the circuit court, acknowledging receipt of Cintas's emergency motion to dismiss Johnson's motion for default judgment and expressing his intention to amend his summons and complaint by changing the named defendant from Cintas to Cintas No. 2. Furthermore, relying on this court's decision in *Hoesley v. La Crosse VFW Chapter,* 46 Wis. 2d 501, 175 N.W.2d 214 (1970), Johnson submitted that default judgment should still be entered against Cintas No. 2 because Cintas No. 2 was the entity served.

¶ 13. On July 6, 2007, the circuit court held a hearing on Johnson's motion for default judgment, at which only counsel for Johnson and counsel for Cintas

501

were present. Johnson moved to orally amend his summons and complaint to name Cintas No. 2 as the correct defendant. The circuit court granted Johnson's motion to amend and then immediately granted default judgment in favor of Johnson and against Cintas No. 2. The circuit court denied that Cintas No. 2 was entitled to notice of the amended summons and complaint. The court reasoned that the amendment did not have the effect of bringing in Cintas No. 2 as a new party since Cintas No. 2 was the entity served with the original summons and complaint.

¶ 14. On July 20, 2007, Cintas No. 2 filed an answer to both Johnson's complaint and amended complaint and moved to intervene and to set aside the default judgment. That same date, by letter, the circuit court responded to Cintas No. 2, advising Cintas No. 2 that it need not intervene because the court already determined that it was a party to the action. The circuit court further stated that it would not accept the filing of Cintas No. 2's answer because default judgment had already been entered. Still, the court indicated that it would be willing to consider a motion for relief from the judgment under Wis. Stat. § 806.07.

¶ 15. Cintas No. 2 heeded the circuit court's suggestion and moved to vacate the default judgment under Wis. Stat. § 806.07. Specifically, Cintas No. 2 argued that it was entitled to relief from the default judgment on the grounds that Cintas No. 2's failure to answer was due to excusable neglect, *see* § 806.07(1)(a); the judgment was void for lack of personal jurisdiction, *see* § 806.07(1)(d); or, alternatively, notions of fairness and justice weigh in favor of granting relief, *see* § 806.07(1)(h).

¶ 16. On September 11, 2007, the circuit court held a hearing on Cintas No. 2's motion to vacate the

502

default judgment and granted the motion, finding that Cintas No. 2's failure to answer was due to mistake or excusable neglect under Wis. Stat. § 806.07(1)(a).

¶ 17.   Nearly a year later, on August 19, 2008, Johnson filed a motion for reconsideration of the circuit court's order vacating the default judgment.[4] According to Johnson, subsequent discovery had revealed that Cintas No. 2 held itself out as Cintas. Thus, Johnson asserted, Cintas No. 2 was not actually misled by Johnson's pleadings; rather, Cintas No. 2 misled Johnson into referring to his employer as Cintas. As examples, Johnson averred that both his offer of employment and employment agreement were prepared by Cintas and that his paycheck was administered by Cintas. In addition, Johnson submitted an affidavit by Kenneth Uva, the Vice President and Representation Services Advisor of Cintas No. 2's registered agent, explaining that the registered agent immediately forwarded Johnson's summons and complaint to Cintas No. 2, per Cintas's instructions. Such evidence, Johnson asserted, demonstrates that Cintas No. 2's failure to timely answer was not excusable.

¶ 18.   The circuit court agreed with Johnson. Accordingly, on February 10, 2009, the circuit court issued a written decision granting Johnson's motion to reconsider the court's order vacating the default judgment. The court determined that the facts in this case are akin to those in *Hoesley,* 46 Wis. 2d 501, in which the correct defendant was served despite being misnamed in the summons and complaint. Because Cintas No. 2 was the entity served, the court concluded that "allow-

---

[4] Alternatively, Johnson moved for sanctions as a result of Cintas No. 2's alleged failure to comply with Johnson's discovery requests.

503

ing the amendment of the pleadings would not be adding a new party to this lawsuit." Furthermore, persuaded by the South Carolina Court of Appeals' decision in *McCall v. IKON,* 611 S.E.2d 315 (S.C. Ct. App. 2005), the court found that the misnomer in Johnson's summons and complaint was "due entirely to the actions of [Cintas No. 2] in terms of the business name it choose [sic] to operate under in the State of Wisconsin and in relation to [Johnson]." Given those circumstances, the circuit court concluded that Cintas No. 2's failure to timely answer was the result of its own actions and neglect. The court therefore granted Johnson's motion to reconsider, permitted Johnson to amend his pleadings to name Cintas No. 2 as the correct defendant, and entered default judgment against Cintas No. 2.

¶ 19.   Cintas No. 2 appealed, and the court of appeals reversed. *Johnson,* 331 Wis. 2d 51. Because Johnson's summons and complaint did not name Cintas No. 2 as required by Wis. Stat. §§ 801.02(1) and 801.09(1), the court of appeals concluded that the circuit court lacked personal jurisdiction over Cintas No. 2, irrespective of whether Cintas No. 2 was served with or had notice of Johnson's pleadings. *Id.,* ¶ 17. As such, the court of appeals held that the default judgment is void. *Id.*

¶ 20.   The court of appeals rejected Johnson's argument that he simply misnamed the correct defendant. *Id.,* ¶ 14. Instead, the court of appeals determined Johnson named the incorrect legal entity. *Id.,* ¶ 15. As a result, the court of appeals ruled that the amendment of Johnson's pleadings had the effect of bringing a new party into the action, "[r]egardless of how Cintas No. 2 held itself to the public." *Id.* Absent service of the amended summons and complaint, the

court of appeals concluded that the circuit court lacked the requisite personal jurisdiction to enter a default judgment against Cintas No. 2. *See id.,* ¶¶ 15–17. The court of appeals therefore reversed the default judgment and remanded the cause to the circuit court for further proceedings. *Id.,* ¶ 17.

¶ 21.   Johnson petitioned this court for review. We accepted on May 25, 2011.

## II. STANDARD OF REVIEW

¶ 22.   In this case, the circuit court granted Johnson's motion to reconsider the court's order vacating the default judgment against Cintas No. 2. The determination of whether to vacate a default judgment is within the circuit court's sound discretion. *Ness v. Digital Dial Commc'ns, Inc.,* 227 Wis. 2d 592, 599, 596 N.W.2d 365 (1999); *Dugenske v. Dugenske,* 80 Wis. 2d 64, 68, 257 N.W.2d 865 (1977). We will not disturb the circuit court's discretionary determination to reconsider its order vacating the default judgment unless the court erroneously exercised its discretion. *See Ness,* 227 Wis. 2d at 599–600. "A circuit court erroneously exercises its discretion if it applies an improper legal standard or makes a decision not reasonably supported by the facts of record." *260 N. 12th St., LLC v. DOT,* 2011 WI 103, ¶ 38, 338 Wis. 2d 34, 808 N.W.2d 372. At the same time, whether a defect in a summons and complaint is fundamental such that it deprives the circuit court of personal jurisdiction is a question of law that this court reviews independently, without deference to the court of appeals or circuit court. *See Burnett v. Hill,* 207 Wis. 2d 110, 121, 557 N.W.2d 800 (1997); *Bulik v. Arrow Realty, Inc. of Racine,* 148 Wis. 2d 441, 444, 434 N.W.2d 853 (Ct. App. 1988).

## III. ANALYSIS

¶ 23. Wisconsin Stat. ch. 801 governs civil procedure as it relates to the commencement of an action. Wisconsin Stat. § 801.02(1) provides, in relevant part, that "a civil action in which a personal judgment is sought is commenced as to any defendant when a summons and a complaint naming the person as defendant are filed with the court," provided that the defendant is served with an authenticated copy of the summons and complaint within 90 days after filing. *See also Ness,* 227 Wis. 2d at 601–02. A Wisconsin court obtains personal jurisdiction over a defendant by proper service of a summons upon the defendant. *See* Wis. Stat. §§ 801.05, 801.11. Wisconsin Stat. § 801.09 lists the required contents of a summons. Relevant to this case, a summons must contain, *inter alia,* "the names and addresses of the parties to the action, plaintiff and defendant." § 801.09(1).

¶ 24. A summons serves two purposes. First, a summons provides notice to the defendant that an action has been commenced against the defendant. *Ness,* 227 Wis. 2d at 602; *Am. Family Mut. Ins. Co. v. Royal Ins. Co. of Am.,* 167 Wis. 2d 524, 530, 481 N.W.2d 629 (1992); *Hoesley,* 46 Wis. 2d at 503; *Bulik,* 148 Wis. 2d at 444. Indeed, notice that apprises a party of the pendency of an action against it and affords the opportunity to present objections is regarded as "[a]n elementary and fundamental requirement of due process." *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950). Second, consistent with Wis. Stat. §§ 801.05 and 801.11, a summons confers personal jurisdiction on a court over the defendant served. *Ness,* 227 Wis. 2d at 602; *Am. Family,* 167 Wis. 2d at 530; *Bulik,* 148 Wis. 2d at 444.

506

¶ 25. Given that a defendant's constitutional right to due process is at stake, " 'Wisconsin requires strict compliance with its rules of statutory service, even though the consequences may appear to be harsh.' " *Am. Family,* 167 Wis. 2d at 531 (quoting *Mech v. Borowski,* 116 Wis. 2d 683, 686, 342 N.W.2d 759 (Ct. App. 1983)). In particular, "[t]he service of a summons in a manner prescribed by statute is a condition precedent to a valid exercise of personal jurisdiction," *Danielson v. Brody Seating Co.,* 71 Wis. 2d 424, 429, 238 N.W.2d 531 (1976), as any action taken by a court over a defendant not properly served is a deprivation of that defendant's constitutional protection, *Bulik,* 148 Wis. 2d at 446. Significantly, a defendant's actual notice of an action is not alone enough to confer personal jurisdiction upon the court; rather, "[s]ervice must be made in accordance with the manner prescribed by statute." *Danielson,* 71 Wis. 2d at 430.

¶ 26. In keeping with the above rule, our courts have recognized a distinction between service that is fundamentally defective, such that the court lacks personal jurisdiction over the defendant in the first instance, and service that is merely technically defective. *See Schaefer v. Riegelman,* 2002 WI 18, ¶ 25, 250 Wis. 2d 494, 639 N.W.2d 715; *Gaddis v. La Crosse Prods., Inc.,* 198 Wis. 2d 396, 401–02, 542 N.W.2d 454 (1996); *Am. Family,* 167 Wis. 2d at 533; *Bulik,* 148 Wis. 2d at 446; Cynthia L. Buchko et al., *Wisconsin Civil Procedure Before Trial* § 3.60 (3d ed. 2007). If the defect is fundamental, then the court lacks personal jurisdiction over the defendant, regardless of whether or not the defect prejudiced the defendant. *Am. Family,* 167 Wis. 2d at 533. If the defect is technical, however,

then the court has personal jurisdiction over the defendant only if the complainant can show that the defect did not prejudice the defendant. *Id.* The burden rests on the complainant to show that service was not defective or, if service was defective, that the defect was merely technical and did not prejudice the defendant. *Id.*

¶ 27. We appreciate that the line between a fundamental defect and a technical defect can be a fine one. Accordingly, we look to case law for guidance.

■

¶ 28. In *American Family,* this court held that a complainant's failure to comply with the requirements of Wis. Stat. § 801.02(1) constitutes a fundamental defect that deprives the circuit court of personal jurisdiction over the defendant, regardless of whether or not the defect prejudiced the defendant. 167 Wis. 2d at 534; *see also Gaddis,* 198 Wis. 2d at 402. As aforementioned, § 801.02(1) directs that a civil action is commenced as to any defendant when a summons and complaint naming the person as defendant are filed with the court, provided that the defendant is served with an authenticated copy of the summons and complaint within 90 days[5] after filing. Thus, pursuant to this court's holding in *American Family,* a fundamental defect occurs when a complainant (a) fails to name the defendant in the summons and complaint; (b) fails to file with the court the summons and complaint; (c) serves the defendant with an unauthenticated copy of the summons and complaint; or (d) serves the defendant with an authen-

---

[5] In 1998, the legislature amended Wis. Stat. § 801.02(1) to provide that a complainant has 90 days, instead of 60 days, after filing to serve the defendant with an authenticated copy of the summons and complaint. *See* 1997 Wis. Act 187, §§ 7, 22(1).

ticated copy of the summons and complaint more than 90 days after filing. *See* 167 Wis. 2d at 533–34.

¶ 29.   The instant case implicates the first of the four requirements identified in Wis. Stat. § 801.02(1): the requirement to name the defendant in the summons and complaint. That a complainant must name the defendant in the summons is echoed by Wis. Stat. § 801.09(1). As indicated previously, § 801.09(1) provides that the summons "shall contain . . . the names and addresses of the parties to the action, plaintiff and defendant."

¶ 30.   In *Bulik,* the complainant failed to name the defendant in the summons as required by Wis. Stat. § 801.09(1). *See* 148 Wis. 2d 441. Accordingly, the court of appeals concluded that the summons was fundamentally defective. *Id.* at 446. In that case, the plaintiff filed a personal injury lawsuit after allegedly falling in the parking lot of a shopping center, outside the entrance to a store operated by Zayre Corporation. *Id.* at 443. In the body of her complaint, the plaintiff alleged that Arrow Realty, Inc. of Racine (Arrow) maintained the grounds on which she fell. *Id.* However, the plaintiff's summons and complaint named as defendants only "Zayre Corporation, a domestic corporation, et al., Defendants." *Id.* at 443–44. The plaintiff served her summons and complaint upon one of Arrow's principals. *Id.* at 444. Arrow failed to timely answer, and consequently, default judgment was entered against it. *Id.*

¶ 31.   Arrow moved to vacate the default judgment, arguing that the summons was defective because it did not name Arrow as a defendant. *Id.* The circuit court denied Arrow's motion, pointing out that Arrow was identified as a defendant in the body of the complaint. *Id.*

¶ 32. Arrow appealed, and the court of appeals reversed. Relying on Wis. Stat. § 801.09(1), the court of appeals held that "[t]he court has jurisdiction only over the parties named," *id.* at 446; stated otherwise, "not naming a person means that a court is without power to do anything with that person regarding the case," *id.* at 447. In *Bulik,* because the summons did not name Arrow as a defendant, the court of appeals concluded that the summons failed to give notice to Arrow that an action had been commenced against it and failed to confer personal jurisdiction on the circuit court over Arrow. *Id.* at 445. The court of appeals so concluded irrespective of the fact that Arrow was served with the summons and therefore might have had knowledge that it was meant to be a party. *See id.* at 446. As the court of appeals explained, the plaintiff's failure to name Arrow as a defendant in the summons meant that the circuit court lacked power over Arrow "in the first instance," regardless of whether or not the defect prejudiced Arrow. *Id.* Because the circuit court lacked personal jurisdiction over Arrow, the court of appeals held that the default judgment was void. *Id.* at 443.

¶ 33. Conversely, in *Hoesley,* this court held that the plaintiff's summons and complaint properly conferred personal jurisdiction on the circuit court over the defendant Thomas Rooney Post No. 1530, Veterans of Foreign Wars of the United States (Thomas Rooney Post No. 1530, VFW), even though the summons and complaint mistakenly named the defendant as "La Crosse VFW Chapter, Thomas Rooney Post." 46 Wis. 2d at 502. In other words, this court concluded that the summons and complaint were merely technically defective.

¶ 34. In that case, the plaintiff filed a personal injury lawsuit after allegedly falling on property owned

510

by Thomas Rooney Post No. 1530, VFW, a corporation located in La Crosse. *Id.* at 501. However, the plaintiff's summons and complaint incorrectly referred to the defendant as an "association" and listed its name as "La Crosse VFW Chapter, Thomas Rooney Post." *Id.* at 502. The plaintiff served her summons and complaint upon the post commander. *Id.* at 501. Thomas Rooney Post No. 1530, VFW then moved to dismiss the action for lack of personal jurisdiction, arguing that neither the summons nor the complaint correctly identified the defendant's name and corporate character. *See id.* at 501–02. The circuit court denied the motion. *Id.* at 502.

¶ 35. Thomas Rooney Post No. 1530, VFW appealed, and this court affirmed. The court concluded that a mere misnomer in a summons and complaint may be corrected by amendment at any stage of the lawsuit, including after a default judgment is entered:

> The general rule is that if the misnomer or misdescription does not leave in doubt the identity of the party intended to be sued, or, even where there is room for doubt as to identity, if service of process is made on the party intended to be sued, the misnomer or misdescription may be corrected by amendment at any stage of the suit, or even after judgment, and a judgment taken by default is enforceable.

*Id.* (internal quotations omitted). The court underscored the difference between an amendment that merely corrects the defendant's name and one that has the effect of bringing a new party into the action: " '[I]f the effect of the amendment is to correct the name under which the right party is sued, it will be allowed. However, if it is to bring in a new party, it will be refused.' " *Id.* at 503 (quoting *Ausen v. Moriarty,* 268 Wis. 167, 174, 67 N.W.2d 358 (1954)). In *Hoesley,* because an amendment to the summons and complaint

511

would have resulted only in correcting the right defendant's name to Thomas Rooney Post No. 1530, VFW, as opposed to bringing a new party into the action, this court held that the circuit court properly denied the defendant's motion to dismiss. *Id.* at 504.

¶ 36. By comparison, in *Parks v. West Side Railway Co.,* 82 Wis. 219, 52 N.W. 92 (1892), a decision that predated *Hoesley* by nearly a century, this court rejected the defendant's argument that the plaintiff's amendment to his summons and complaint had the improper effect of discharging one party as defendant and substituting another. In that case, the plaintiff filed a complaint, alleging that noise, smoke, steam, and gases emitted from an electrical power house constituted a nuisance. *Id.* at 219. At the time, the power house was owned and operated by the West Side Rail*road* Company. *Id.* at 220. However, the plaintiff's summons and complaint named as defendant the West Side Rail*way* Company. *See id.* at 219. The facts revealed that over a year prior to the commencement of the plaintiff's action, the West Side Railway Company conveyed all of its franchises and property, including the building at issue, to the West Side Railroad Company, a then newly organized corporation. *Id.* at 220. Only the latter corporation maintained an electrical railroad and used the building as a power house; the former operated its railway by animal power and used the building as a stable for horses. *Id.* at 219–20. Subsequent to the conveyance, the West Side Railway Company ceased doing business. *Id.* at 220. The plaintiff served his summons and complaint upon Washington Becker, the president of both companies. *Id.* The plaintiff then moved to amend his summons and complaint by striking out the "way" in the defendant's name and inserting "road" in its place. *Id.* at 219. The circuit court granted the motion. *Id.*

¶ 37. The West Side Railroad Company appealed to this court, arguing that the amendment to the summons and complaint did not have the legitimate effect of correcting a party's name but rather had the improper effect of discharging one party as defendant and substituting another. *Id.* at 221. The court disagreed, commenting that the defendant's argument "does not appeal strongly to a mind which is looking at the substance of things, rather than the mere form." *Id.* Had the West Side Railway Company never existed, the court reasoned, the amendment would have "no doubt" been unobjectionable. *Id.* at 221–22. The court determined that the result should be no different when the company maintained only a "nominal existence, without property or franchises." *Id.* at 222. As far as the court was concerned, "the corporation which was operating the electrical power house and railroad was sued in th[e] action, with a slight mistake in [the] name, which the [circuit] court properly corrected." *Id.*

¶ 38. Having set forth the applicable law, we turn now to the instant case. Johnson urges us to conclude that the circuit court appropriately reconsidered its order vacating the default judgment against Cintas No. 2. Specifically, relying on *Hoesley,* Johnson maintains that he merely misnamed Cintas No. 2 as Cintas in his summons and complaint, and therefore, his pleadings were only technically defective. He argues that the defect did not prejudice Cintas No. 2 because, pursuant to the circuit court's finding, Cintas No. 2 was served with the summons and complaint. We disagree.

¶ 39. We conclude that the circuit court erred as a matter of law when it reconsidered its order vacating the default judgment against Cintas No. 2. Johnson's failure to name Cintas No. 2 as a defendant in his summons and

complaint, contrary to Wis. Stat. §§ 801.02(1) and 801.09(1), constituted a fundamental defect that deprived the circuit court of personal jurisdiction over Cintas No. 2, regardless of whether or not the defect prejudiced Cintas No. 2. Because the circuit court lacked personal jurisdiction over Cintas No. 2, the default judgment entered against Cintas No. 2 is void.

¶ 40. This case is resolved by a straightforward application of the above-stated law. As made clear by both *American Family* and *Bulik,* a complainant's failure to name a defendant in the summons and complaint in accordance with Wis. Stat. §§ 801.02(1) and 801.09(1) constitutes a fundamental defect that precludes personal jurisdiction over that defendant, regardless of whether or not the defect prejudiced the defendant. *See Am. Family,* 167 Wis. 2d at 534; *Bulik,* 148 Wis. 2d at 446–47. Here, it is undisputed that Johnson named Cintas, not Cintas No. 2, in his summons and complaint. Cintas No. 2, as a wholly owned subsidiary of Cintas, is a legal entity that exists independently of Cintas. *See DOR v. River City Refuse Removal, Inc.,* 2007 WI 27, ¶ 43, 299 Wis. 2d 561, 729 N.W.2d 396 (explaining that this court "treat[s] wholly-owned subsidiaries as independent legal entities"). Johnson's failure to name Cintas No. 2 in his summons and complaint constituted a fundamental defect that precluded the circuit court of personal jurisdiction over Cintas No. 2, regardless of whether or not the defect prejudiced Cintas No. 2. For that reason, it is irrelevant that Johnson served his summons and complaint upon the registered agent for Cintas No. 2 and Cintas No. 2 therefore might have had knowledge that it was meant to be a party.[6] *See Bulik,* 148 Wis. 2d at 446.

---

[6] Citing this court's recent decision in *Tews v. NHI, LLC,* 2010 WI 137, 330 Wis. 2d 389, 793 N.W.2d 860, the dissent

As far as the law is concerned, Cintas No. 2 was "a stranger to the court." *See id.* at 444.

■ ■

¶ 41. While Johnson relies on *Hoesley* to support his position that his summons and complaint were only technically defective, the opposite is true: *Hoesley* supports our conclusion that Johnson's pleadings were fundamentally defective. *Hoesley* instructs that a misnomer in a summons and complaint constitutes a technical defect when an amendment to the pleadings would result in merely correcting the name under which the right party is sued, as opposed to bringing an entirely new party into the action. *See* 46 Wis. 2d at 503. In this case, Johnson amended his summons and complaint by changing the named defendant from Cintas to Cintas No. 2. Unlike the single corporation in

submits that "this court has acknowledged that a slight mistake in naming a defendant does not necessarily cause that defendant any confusion about whether it was the party against which the plaintiff intended to file suit." Dissent, ¶ 56 n.4. As the dissent acknowledges, *Tews* was decided in an entirely "different context," *id.,* namely, relation-back. Pursuant to Wis. Stat. § 802.09(3), an amended pleading that adds a new party after the statute of limitations has expired relates back to the date of the filing of the original pleading if, *inter alia,* within the applicable limitations period, the added party (a) received such notice of the institution of the action that it will not be prejudiced in maintaining a defense on the merits and (b) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the added party. *Tews,* 330 Wis. 2d 389, ¶ 72. Relation-back is not at issue in the case now before us. Moreover, as recognized by both the text of § 802.09(3) and the *Tews* decision itself, application of the relation-back doctrine presumes that the amended pleading had the effect of adding a new party, a point which supports our decision today. *See id.,* ¶¶ 62, 68, 72.

*Hoesley,* which the plaintiff correctly sued but simply misnamed as "La Crosse VFW Chapter, Thomas Rooney Post," *see* 46 Wis. 2d at 502, Cintas and Cintas No. 2 are two, distinct legal entities, and Johnson mistakenly sued the first instead of the second. Moreover, unlike the railway company in *Parks,* which, by the time the plaintiff commenced his action, had ceased doing business and maintained only a nominal existence, *see* 82 Wis. at 220, Cintas was and continues to be a going concern. Consequently, by changing the named defendant from Cintas to Cintas No. 2, Johnson's amendment did not have the effect of either correcting the name of the right party that was sued all along, as in *Hoesley,* or correcting a misnomer to reflect the only going concern that could be—and unmistakably was intended to be—sued, as in *Parks.* Rather, Johnson's amendment had the effect of substituting the wrong party, Cintas, with another existing and entirely new party, Cintas No. 2. Thus, absent proper service of the amended summons and complaint upon Cintas No. 2, the circuit court lacked personal jurisdiction over Cintas No. 2. *See Rosenthal v. Rosenthal,* 12 Wis. 2d 190, 196, 107 N.W.2d 204 (1961) ("A court cannot acquire jurisdiction of an action by amending a process in order to give it such jurisdiction.").

¶ 42.   Johnson does not quarrel with the fact that his summons and complaint named the wrong party, Cintas, and that the party he intended to sue, Cintas No. 2, is an independent legal entity. Instead, Johnson maintains that when the party intended to be sued is the entity served, as Cintas No. 2 was in this case, the distinction between a fundamental and technical defect should not depend upon the mere "happenstance" of whether the misnomer in the summons and complaint corresponds to another, existing legal entity. So long as

the right party is the entity served, Johnson contends, the purpose of the summons is fulfilled. According to Johnson, this court's decision in *Ness,* 227 Wis. 2d 592, "stands for the proposition that when a plaintiff has served the party he or she intended to sue, a misnomer is subject to correction, without re-serving the defendant, even if the misnomer corresponds to the actual name of someone else."

¶ 43. While Johnson's argument may seem appealing on the surface, it lacks support in the law. To begin with, as articulated by the court of appeals in *Bulik,* a summons that does not name the party intended to be sued fails, as a matter of law, to give notice to that party that an action has been commenced against it. *See* 148 Wis. 2d at 445, 446. That the named party happens to have a name that closely resembles the name of the party intended to be sued is simply not enough. *See id.* at 445 ("[V]ague designation does not give fair notice to the specific individual" intended to be sued). In any event, Johnson's argument rests on the false premise that a summons' only purpose is to provide notice to the defendant that an action has been commenced against it. As set forth above, a summons serves a second and equally significant purpose of conferring personal jurisdiction on a court over the defendant served. This court has made clear that " 'actual notice alone is not enough to confer jurisdiction upon the court. Service must be made in accordance with the manner prescribed by statute.' " *Am. Family,* 167 Wis. 2d at 530 (quoting *Danielson,* 71 Wis. 2d at 430).

¶ 44. Furthermore, our decision in *Ness* does not stand for the proposition that Johnson suggests. The sole issue in *Ness* was whether, under Wis. Stat. § 801.14(1) (1995–96), an amended summons and com-

plaint that was filed with the court but not served upon a defaulting party creates a new 20–day window under Wis. Stat. § 812.11 (1995–96) for the defaulting party to answer the amended complaint. *See* 227 Wis. 2d at 595. This court answered that question in the negative, holding that "a defaulting party cannot answer an amended complaint, thereby attempting to cure its default, when the party is already in default at the time the amended complaint is filed, unless the amended complaint relates to a new or additional claim for relief." *Id.* at 607–08.

¶ 45. The facts in *Ness* were procedurally complex and largely immaterial to the case now before us. For our purposes today, it is sufficient to recount the following. A receiver filed a garnishment action against two businesses, U.S. Billing, Inc. (U.S. Billing) and Zero Plus Dialing, Inc. (Zero Plus). *Id.* at 597. U.S. Billing was a corporation based in Texas. *Id.* However, the receiver's complaint mistakenly named as defendant a Wisconsin-based corporation that also bore the name U.S. Billing. *See id.* Additionally, the receiver mistakenly served the summons and complaint upon the Wisconsin-based U.S. Billing. *Id.* The receiver served Zero Plus through its in-house counsel. *Id.* Zero Plus and the Texas-based U.S. Billing happened to share the same in-house counsel. *See id.* at 604 n.10. The Wisconsin-based U.S. Billing immediately answered the complaint, denying any involvement in the underlying events. *Id.* at 597. Subsequently, the receiver, realizing his mistake, served the correct U.S. Billing through its registered agent in Texas. *Id.* Neither Zero Plus nor the Texas-based U.S. Billing answered the complaint. *Id.* After they defaulted, the receiver amended the complaint to correctly name as garnishee the Texas-based U.S. Billing rather than the Wisconsin-based U.S. Bill-

518

ing as originally designated. *Id.* at 597–98. Pursuant to Wis. Stat. § 801.14(1) (1995–96), the receiver did not serve the amended complaint upon the Texas-based U.S. Billing. *Id.* at 598. The receiver then moved for default judgment against both Zero Plus and the Texas-based U.S. Billing for failure to answer the original complaint. *Id.* The garnishees did not assert any defense to the garnishment action but rather objected to the attempted garnishment of funds generated outside of Wisconsin. *Id.* The circuit court rejected their objection and granted default judgment against both Zero Plus and the Texas-based U.S. Billing. *Id.*

¶ 46. The garnishees twice moved to vacate the default judgment on the grounds of excusable neglect. *Id.* at 598–99. They also twice filed a proposed answer to the original complaint, alleging that the only amount at issue was the amount collected from Wisconsin consumers. *Id.* While the circuit court denied their first motion to vacate the default judgment, *id.* at 598, the court granted the second, *id.* at 599. As articulated by this court, the circuit court "vacated the judgment solely on the ground that the original complaint on which the default judgment was based was superseded by the amended complaint . . . ." *Id.* at 599. Because the garnishees filed their proposed answer within 20 days of the filing of the amended complaint pursuant to Wis. Stat. § 812.11 (1995–96), the circuit court determined that the answer was timely. *Id.*

¶ 47. The receiver appealed, and the court of appeals reversed, concluding that an amended complaint does not supersede the original complaint in regard to any defaulting party, unless the amended complaint presents an additional claim for relief. *Id.* The garnishees appealed to this court, and we affirmed. *Id.* at 595. Citing the plain language of Wis. Stat.

519

§ 801.14(1) (1995–96), we agreed with the court of appeals that once a defendant defaults, it loses its ability to answer an amended complaint unless the amended complaint asserts new or additional claims for relief. *Id.* at 601. In so concluding, we noted that the receiver's amended complaint did not present new or additional claims but rather made "merely a technical change." *Id.* at 603–04. In a footnote, we clarified that "the amended complaint is to be viewed as a technical change" because of the relationship between Zero Plus and the Texas-based U.S. Billing, namely, the fact that the two entities had the same in-house counsel which was served at the outset. *Id.* at 604 n.10.

¶ 48. Presumably, it is that footnote on which Johnson hangs on to argue that his summons and complaint were only technically defective. Johnson submits that "*Ness* is indistinguishable from this case": like the receiver in *Ness* whose pleadings mistakenly named as defendant the Wisconsin-based U.S. Billing instead of the Texas-based U.S. Billing, *see id.* at 597–98, Johnson's pleadings mistakenly named as defendant Cintas instead of Cintas No. 2. It follows, according to Johnson, that because we deemed the amendment in *Ness* merely a technical change, then so too should we deem Johnson's amendment a mere technical change. While we appreciate some of the procedural similarities between *Ness* and the instant case, we do not regard *Ness* as controlling on the issue before us today: whether Johnson's pleadings were fundamentally or technically defective. As our foregoing discussion makes apparent, the *Ness* court never analyzed whether the circuit court had personal jurisdiction over the Texas-based U.S. Billing as a result of the receiver's failure to name that specific corporation in his original garnishment complaint. Indeed, the *Ness* court made a point to state that the Texas-based U.S.

520

Billing "did not assert any defense to the plaintiff's garnishment action," jurisdictional or otherwise. *See id.* at 598. Again, the sole issue in *Ness* was whether, under Wis. Stat. § 801.14(1) (1995–96), the receiver's amended complaint that was filed with the court but not served upon the defaulting garnishees created a new 20–day window under Wis. Stat. § 812.11 (1995–96) for the garnishees to answer the amended complaint. *See id.* at 595. That being the case, we decline to expand *Ness* in a manner that Johnson suggests and thereby effectively override the requirements of Wis. Stat. §§ 801.02(1) and 801.09(1) that heretofore, have been strictly construed.

¶ 49. Finally, Johnson contends that even if we conclude that his failure to name Cintas No. 2 constituted a fundamental defect, we ought to nevertheless construe his pleadings as only technically defective on the grounds that Cintas No. 2 held itself out as Cintas. In support of his argument, Johnson points to the circuit court's specific findings that Johnson served his summons and complaint upon Cintas No. 2 and that the misnomer in the pleadings was "due entirely to the actions of [Cintas No. 2] in terms of the business name it choose [sic] to operate under in the state of Wisconsin and in relation to [Johnson]." Under such circumstances, Johnson asserts, fairness demands that we construe his pleadings as conferring upon the circuit court personal jurisdiction over Cintas No. 2. Again, we decline Johnson's invitation for the simple reason that his argument is without support in the law.[7] While the

---

[7] In reconsidering its order to vacate the default judgment against Cintas No. 2, the circuit court relied in large part upon the South Carolina Court of Appeals' decision in *McCall v. IKON*, 611 S.E.2d 315 (S.C. Ct. App. 2005). In *McCall,* the South

circuit court made findings related to the manner in which Cintas No. 2 held itself out to the public and to Johnson specifically, the facts remain that Johnson named Cintas instead of Cintas No. 2 in his summons

Carolina Court of Appeals held that the plaintiff effectively served the defendant IKON Office Solutions Technology Services, LLC, even though the plaintiff's summons and complaint named as defendant "IKON, d/b/a IKON Educational Services," referring to a trade name under which the defendant was not registered to do business in South Carolina. *Id.* at 318–19. The court reasoned that because the defendant held itself out as IKON Education Services, "it would be wholly inequitable to find [the plaintiff's] attempts to serve the company under that name ineffective." *Id.* at 318.

As the court of appeals in the instant case aptly noted, *see Johnson v. Cintas Corp. No. 2,* 2011 WI App 5, ¶ 14 n.4, 331 Wis. 2d 51, 794 N.W.2d 475, the South Carolina Court of Appeals' decision in *McCall* is not germane to our decision today because the South Carolina courts do not require strict adherence to their rules governing service of process. As the *McCall* court explained, it has "never required exacting compliance with the rules to effect service of process." *Id.* at 317 (internal quotations omitted). In South Carolina, personal jurisdiction turns not on strict compliance with the rules governing service of process but rather on whether the plaintiff sufficiently complied with the rules and whether the defendant had notice of the proceedings. *Id.*

By comparison, as we have already explained, " 'Wisconsin requires strict compliance with its rules of statutory service . . . .' " *Am. Family Mut. Ins. Co. v. Royal Ins. Co. of Am.,* 167 Wis. 2d 524, 531, 481 N.W.2d 629 (1992) (quoting *Mech v. Borowski,* 116 Wis. 2d 683, 686, 342 N.W.2d 759 (Ct. App. 1983)). A complainant's failure to name a defendant in his or her summons and complaint constitutes a fundamental defect that deprives the court of personal jurisdiction over that defendant, regardless of whether or not the defect prejudiced the defendant. *Id.* at 534. "Substantial compliance is not a factor." *Id.*

and complaint, and our courts recognize Cintas No. 2 as a legal entity that exists independently of its parent corporation. Therefore, the court lacked personal jurisdiction over Cintas No. 2 in the first instance, irrespective of whether Johnson was under the impression that he was suing the right entity or whether Johnson served the right entity. As we have explained, Wisconsin requires plaintiffs to strictly comply with our rules of statutory service, " 'even though the consequences may appear to be harsh.' " *Am. Family,* 167 Wis. 2d at 531 (quoting *Mech,* 116 Wis. 2d at 686). It is worth mentioning that the DFI records, accessible online to the public, unambiguously reveal that Cintas is not a registered corporation in Wisconsin. In any case, if Johnson remained unsure of which entity to name, Cintas or Cintas No. 2, it would have been a simple and routine matter to name them both.

## IV. CONCLUSION

¶ 50. We conclude that service in this case was fundamentally defective because Johnson failed to name Cintas No. 2 as a defendant in his summons and complaint, contrary to Wis. Stat. §§ 801.02(1) and 801.09(1). Therefore, the circuit court lacked personal jurisdiction over Cintas No. 2, regardless of whether or not the defect prejudiced Cintas No. 2 and regardless of the manner in which Cintas No. 2 held itself out to the public or to Johnson specifically. Because the circuit court lacked personal jurisdiction over Cintas No. 2, the default judgment entered against Cintas No. 2 is void.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 51. DAVID T. PROSSER, J., did not participate.

¶ 52. ANN WALSH BRADLEY, J. (*dissenting*). It may be that in some instances, there is a "fine line"

between fundamental and technical defects. Majority op., ¶ 27. However, this case falls squarely on the technical side of that line.

¶ 53. A straightforward application of the rules set forth in *Hoesley*[1] and *Parks*[2] to the facts of this case reveals that the summons and complaint contained a mere misnomer—a technical defect that does not deprive the circuit court of jurisdiction. The majority reaches the wrong result by dodging the applicable standards for mere misnomers, sidestepping precedent, and crafting an unreasonable and unnecessary new rule. Accordingly, I respectfully dissent.

I

¶ 54. The majority acknowledges that a mere misnomer in the summons and complaint does not deprive the circuit court of jurisdiction over the misnamed defendant. Majority op., ¶¶ 33–35 (citing *Hoesley v. La Crosse VFW Chapter*, 46 Wis. 2d 501, 175 N.W.2d 214 (1970)). Nevertheless, the majority barely pauses to consider whether the omission of the designation "No. 2" could be considered a misnomer. Rather, it leaps to the conclusion that Johnson named the wrong party: "the facts remain that Johnson named Cintas instead of Cintas No. 2 in his summons and complaint, and our courts recognize Cintas No. 2 as a legal entity that exists independently of [Cintas] its parent corporation." *Id.*, ¶ 49.

¶ 55. The majority's dodge results in a new bright-line rule: When a plaintiff misnames a party and the misnomer happens to be the correct name of another legal entity, the defect is transformed from technical to

---

[1] *Hoesley v. La Crosse VFW Chapter*, 46 Wis. 2d 501, 175 N.W.2d 214 (1970).

[2] *Parks v. West Side Ry. Co.*, 82 Wis. 219, 52 N.W. 92 (1892).

fundamental.[3] *See id.,* ¶¶ 40–41. The majority appears to recognize that its new rule does not sit comfortably with Wisconsin case law, including *Parks v. West Side Railway Co.,* 82 Wis. 219, 52 N.W. 92 (1892). Majority op., ¶ 41. Nevertheless, it concludes that, regardless of whether Cintas Corporation No. 2 held itself out to its employees as "Cintas Corporation," the amendment to correct the mistake in the complaint "did not have the effect of [] correcting the name of the right party" and instead, had the effect of bringing in a new party. *Id.,* ¶ 41.

## II

¶ 56.   A mistake in the intended defendant's name is a technical defect, and it does not deprive the court of jurisdiction as long as the intended defendant was served and suffered no prejudice as a result of the misnomer.[4] In one case, for example, the court determined that the plaintiff's mistake in naming "Thomas

---

[3] The majority's new rule mirrors the rule proposed by Cintas Corporation No. 2 during oral argument: "If there is only one entity in the world that could possibly be referred to by that misnomer, that is [the] *Hoesley* [case], and [the summons and complaint are] not [fundamentally] defective. If in fact there is another entity . . . , if there is another one just like that, it may well be [fundamentally] defective."

[4] In a different context, this court has acknowledged that a slight mistake in naming a defendant does not necessarily cause that defendant any confusion about whether it was the party against which the plaintiff intended to file suit. *See Tews v. NHI, LLC,* 2010 WI 137, ¶¶ 74–76, 330 Wis. 2d 389, 793 N.W.2d 860. In *Tews,* the plaintiff mistakenly named "WE Energies" and "Wisconsin Energy Corporation" rather than "Wisconsin Energy Power Company," the correct name of the intended defendant. *Id.,* ¶ 1. It finally amended its complaint to name Wisconsin Energy Power Company, but only after the statute of limita-

Rooney Post No. 1530, Veterans of Foreign Wars of the United States" as "La Crosse VFW Chapter, Thomas Rooney Post" was a mere misnomer. *Hoesley,* 46 Wis. 2d 501.

¶ 57. The *Hoesley* court explained the "general rule" of misnomers as follows: "[I]f the misnomer or misdescription does not leave in doubt the identity of the party intended to be sued, or, even where there is room for doubt as to identity, if service of process is made on the party intended to be sued, this misnomer or misdescription may be corrected by amendment at any stage of the suit, or even after judgment, and a judgment taken by default is enforceable." *Id.* at 502.

¶ 58. A straightforward application of this standard reveals that there was a misnomer in this case. Here, Johnson served the registered agent of his employer, Cintas Corporation No. 2, with an authenticated copy of the summons and complaint. In that summons and complaint, Johnson correctly identified the address of the defendant. However, the name on the summons and complaint read "Cintas Corporation" rather than "Cintas Corporation No. 2."[5] The circuit court found no prejudice as a result of the misnomer, and it entered default judgment.

tions had expired. *Id.,* ¶ 20. The parties presumed that the effect of the amendment was to add a new party, and accordingly, the court did not address whether the mistake in naming could be considered a mere misnomer. When an amendment adds a new party, the intended defendant's statute of limitations defense will be defeated under Wis. Stat. § 802.09(3) (the relation-back statute) if the intended defendant received fair notice of the claim within the period of limitations. *Id.,* ¶ 2.

[5] In full, the summons and complaint named the defendant as follows: "CINTAS CORPORATION a domestic corporation 9828 South Oakwood Park Drive Franklin, WI 53132."

¶ 59. On its face, the omission of the designation "No. 2" appears to be nothing more than a mistake. Had the complaint named "Cintas Corporation No. 3," "Cintas #2 Corporation," or even "Sintas Corporation No. 2," there is little doubt that the error in naming would be considered a mere misnomer under *Hoesley*. Accordingly, the question would be whether the defendant was prejudiced by that mistake.

¶ 60. The wrinkle in this case is that there happens to exist a separate corporation with the name "Cintas Corporation." For the majority, that fact transforms an otherwise technical defect into one that is fundamental.[6]

### III

¶ 61. The majority's new bright-line rule is contrary to precedent. In addition to contravening *Hoesley*,

---

[6] The majority cites to *Bulik v. Arrow Realty, Inc. of Racine*, 148 Wis. 2d 441, 434 N.W.2d 853 (Ct. App. 1988) and *American Family Mutual Insurance Co. v. Royal Insurance Co. of America*, 167 Wis. 2d 524, 481 N.W.2d 629 (1992), to bolster its analysis. Majority op., ¶ 40. Nevertheless, these cases are not about misnomers, and accordingly, neither case governs the outcome here.

In *Bulik*, the defect was the failure to name the defendant in the original summons at all. The plaintiff was injured when she fell in the parking lot of a store operated by Zayre Corporation. 148 Wis. 2d at 443. She intended to file suit against Zayre and Arrow Realty, the corporation that maintained the grounds. Nevertheless, the summons named only "Zayre Corporation, a domestic corporation, et al." *Id.* at 443–44. It did not name Arrow. *Id.* Accordingly, there was no "misnomer" in *Bulik* that could be construed as a technical defect.

Likewise, in *American Family*, there was no defect in naming the defendant. Rather, the defendant was correctly named in a summons and complaint, but the summons and complaint were not authenticated as required by statute. 167 Wis. 2d at 527.

as discussed above, it is difficult to reconcile the majority's rule with *Parks,* 82 Wis. 219.

¶ 62. In that case, there existed two separate corporations: West Side Railway Co. and West Side Railroad Co. *Id.* at 219–20. The plaintiff mistakenly named West Side Rail*way* Co. rather than the related West Side Rail*road* Co. *Id.* at 219. When Parks moved to amend the summons and complaint by striking "way" and replacing it with "road," West Side Railroad Co. objected. *Id.* at 221. It asserted that the amendment was "not a legitimate amendment of the name of the party, but the discharge of one party as defendant and the substitution of another." *Id.*

¶ 63. Despite the mistake and the existence of a separate corporation bearing the name West Side Railway Co., the *Parks* court refrained from concluding that an amendment to correct the name from Railway to Railroad would have the effect of bringing in a new party. Rather, it asserted that "[n]o doubt can be entertained that if there had been no corporation bearing the name of the West Side Rail'way' Company, the amendment would have been unobjectionable." *Id.* at 221–22. It concluded that the intended defendant was sued "with a slight mistake in name, which the court properly corrected" by amendment. *Id.* at 222.

¶ 64. The majority attempts to distinguish *Parks* on the ground that West Side Railway Co. maintained only a "nominal existence." Majority op., ¶ 41. It is not clear, however, why this distinction would make any difference. Under the majority's analysis, "the facts remain that [Parks] named [West Side Railway] instead of [West Side Railroad] in his summons and complaint, and our courts recognize [West Side Railroad] as a legal entity that exists independently of [West Side Railway]." *See id.,* ¶ 49.

¶ 65.   Additionally, when the majority's new rule is tested against analogous scenarios, it creates unreasonable and unnecessary results. Imagine a plaintiff who, intending to sue John Smith Sr., serves him with a summons and complaint that mistakenly omits the designation, "Sr." When considered in light of *Hoesley,* the omission would appear to be nothing more than a misnomer.

¶ 66.   Nevertheless, under the majority's analysis, it would appear that John Smith Sr. could successfully claim that the misnomer was a fundamental defect merely by opening a telephone book and locating a man named "John Smith." Under the majority's analysis, John Smith Sr. could assert that an amendment to correct his name had the effect of bringing him in as a new party.

¶ 67.   I expect that the majority would not countenance such an unreasonable result. Perhaps the majority would distinguish this scenario on the ground that there is no relationship between John Smith Sr. and the John Smith in the telephone book. If so, this hypothetical reveals what is truly at stake.

¶ 68.   Corporate separateness is a shield that protects a corporation from the liabilities of separate but related entities. Here, however, the majority transforms the shield of corporate separateness into a sword. Under the majority's analysis, a corporation can use the name of a related entity as a trade name, induce plaintiffs to name that trade name in the summons and complaint, fail to answer the complaint, and then escape any consequence for the default by claiming lack of jurisdiction. The law should not sanction such an abuse of the principles of corporate separateness and legal process.

¶ 69. Ultimately, I conclude that the majority's new rule is wholly unnecessary, given that existing law is well equipped to handle any confusion or lack of notice that results from a misnomer. If a plaintiff serves but misnames the defendant, the plaintiff who made the mistake has the burden to prove that the defendant was not prejudiced as a result. *Am. Family Mut. Ins. Co. v. Royal Ins. Co. of Am.*, 167 Wis. 2d 524, 533, 481 N.W.2d 629 (1992). If the defendant has truly been confused by the misnomer, then the plaintiff will fail to meet its burden on prejudice, and the circuit court will conclude that it lacks jurisdiction over the defendant.

¶ 70. Because the majority dodges the applicable standards regarding mere misnomers, sidesteps precedent, and crafts an unreasonable and unnecessary new rule, I respectfully dissent.

¶ 71. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON joins this dissent.