ANN WALSH BRADLEY, J. (dissenting).
¶45 Until now, it has been well settled that a supervisory writ is intended to be "an extraordinary and drastic remedy[,]" reserved for rare situations involving "some grievous exigency." State ex rel. Kalal v. Circuit Ct. for Dane Cty., 2004 WI 58, ¶ 17, 271 Wis. 2d 633, 681 N.W.2d 110 ; see Matter of Civil Contempt of Kroll, 101 Wis. 2d 296, 304, 304 N.W.2d 175 (Ct. App. 1981) (denominating a supervisory writ an "extraordinary remed[y]"); State ex rel. Kenneth S. v. Circuit Ct. for Dane Cty., 2008 WI App 120, ¶ 8, 313 Wis. 2d 508, 756 N.W.2d 573 (referring to a supervisory writ as an "extraordinary and drastic remedy that is to be issued only upon some grievous exigency") (citation omitted).
¶46 Ignoring this admonishment, the majority greatly expands the application of our supervisory writ jurisprudence. Throwing caution to the wind, it elevates jurisdictional errors above all others as deserving of special treatment under Wisconsin's supervisory writ procedures.
¶47 In doing so, the majority pays lip service to the familiar and well-established four-factor test used to determine whether a supervisory writ is an appropriate *548 remedy under the circumstances, but fails to apply it correctly. Adopting an argument that CityDeck did not make, the majority's result is that a supervisory writ, which is supposed to be reserved for the most "extraordinary" or "grievous" situations, may become commonplace.
¶48 In my view, CityDeck has not met a necessary prerequisite for the issuance of a supervisory writ. Mere delay in arbitration proceedings is not the type of "grave hardship" or "irreparable harm" that entitles a party to such a writ.
¶49 Accordingly, I respectfully dissent.
*848 I
¶50 Although the majority spills a great deal of ink exploring the history of writ procedures in Wisconsin, it ultimately purports to reaffirm and apply the familiar and well-established four-factor test for determining whether a supervisory writ is an appropriate remedy under the circumstances.
¶51 As the majority correctly explains, "[a] party seeking the issuance of a supervisory writ must establish four factors: (1) a circuit court had a plain duty and either acted or intends to act in violation of that duty; (2) 'an appeal is an inadequate remedy;' (3) 'grave hardship or irreparable harm will result;' and (4) the party requested relief 'promptly and speedily.' " Majority op., ¶30 (citing DNR. v. Wis. Court of Appeals, Dist. IV, 2018 WI 25, ¶ 9, 380 Wis. 2d 354, 909 N.W.2d 114 ). If any one of these factors is not present, the writ must be denied. Kalal, 271 Wis. 2d 633, ¶ 17, 681 N.W.2d 110 ; see also State ex rel. Kiekhaefer v. Anderson, 4 Wis. 2d 485, 490, 90 N.W.2d 790 (1958) (explaining that where the "petition *549 fails to allege any facts which disclose that he would suffer great hardship[,]" a writ of prohibition may not be granted).
¶52 I focus my analysis on the third supervisory writ factor: grave hardship or irreparable harm. The irreparable harm claimed by CityDeck is a simple delay in its arbitration proceedings. In my view, the fact that CityDeck's arbitration is delayed, without more, is insufficient to show grave hardship or irreparable harm.
¶53 The harm caused by any such delay is not similar to the harm suffered by parties that previously sought and obtained supervisory writs. In prior cases, the petitioner would have suffered a complete denial of a right in a way that could not be undone or remedied in the absence of a supervisory writ-that is, the "bells" in those cases could not be "unrung."
¶54 For example, courts have determined that the failure to substitute a judge when required by law constitutes irreparable harm. State ex rel. J.H. Findorff & Son, Inc. v. Circuit Ct. for Milwaukee Cty., 2000 WI 30, ¶ 37, 233 Wis. 2d 428, 608 N.W.2d 679 (2000) ; State ex rel. Laborers Int'l Union of N. Am., AFL-CIO v. Circuit Ct. for Kenosha Cty., 112 Wis. 2d 337, 342, 332 N.W.2d 832 (Ct. App. 1983) ; State ex rel. Oman v. Hunkins, 120 Wis. 2d 86, 91, 352 N.W.2d 220 (Ct. App. 1984). Similarly, the potential disclosure of information subject to the attorney-client privilege is irreparable harm sufficient to support the issuance of a supervisory writ. State ex rel. Godfrey & Kahn, S.C. v. Circuit Ct. for Milwaukee Cty., 2012 WI App 120, ¶ 52, 344 Wis. 2d 610, 823 N.W.2d 816 (Ct. App. 2012). Finally, in DNR, 380 Wis. 2d 354, ¶ 47, 909 N.W.2d 114, this court *550 determined that the failure to honor an appellant's statutory right to choice of venue constituted irreparable harm.
¶55 Ignoring this case law, CityDeck fails to make any persuasive argument that the delay caused by the circuit court's stay of the arbitration proceedings constitutes grave hardship or irreparable harm. CityDeck's "argument" with regard to this factor is tucked away in the very last paragraph of its 28-page brief-in-chief.[1]
¶56 It baldly asserts that, in the absence of a supervisory writ, it will incur unspecified "substantial damages for which there is no adequate remedy." CityDeck further complains that "[t]he inability to resolve the arbitration and the indefinite delay resulting from the Stay Order has already caused substantial damage to CityDeck's *849 interests and will continue to do so until it is lifted."
¶57 In my view, CityDeck is not being denied its right to arbitrate its claims. Arbitration is merely delayed, not denied.[2] CityDeck loses no statutory right and it loses no contractual right.
¶58 What about the delay in the arbitration proceedings cannot be remedied with money, such as interest on CityDeck's judgment if it is successful in arbitration? Indeed, at oral argument, CityDeck asserted that "the irreparable harm is that we continue to lose money that we will not recover because of the *551 delay associated with our arbitration proceedings." Exactly how will the loss of money from delay result in grave hardship or irreparable harm? CityDeck does not explain, so the majority conjures its own justification.
¶59 Putting on its advocacy hat, the majority sua sponte discovers a new type of irreparable harm. In the majority's broad view, CityDeck suffers irreparable harm by the delay of arbitration proceedings because "[a] litigant's right to be free from the exercise of the court's power has been completely denied." Majority op., ¶41.
¶60 If this is the thrust of the injury (i.e., being subject to a court's power despite that court's lack of jurisdiction), then the majority has short-circuited Wisconsin's supervisory writ procedure. It treats jurisdictional errors as a special class of errors for which the issuance of a supervisory writ appears to be all but a certainty.[3]
¶61 Following the majority's logic, would a defendant be entitled to a supervisory writ if a motion to dismiss for lack of subject matter jurisdiction was erroneously denied? See Richards v. Young, 150 Wis. 2d 549, 557, 441 N.W.2d 742 (1989) ("This court has previously held that if the statutory requirements for obtaining judicial review are not fully complied with, the subject matter jurisdiction of the circuit court cannot be invoked.").
¶62 Is a supervisory writ to be employed whenever it is asserted that a circuit court exercised personal jurisdiction despite a fundamental defect in *552 service? See Johnson v. Cintas Corp. No. 2, 2012 WI 31, ¶ 50, 339 Wis. 2d 493, 811 N.W.2d 756. Could a party turn to a supervisory writ to resolve a question of whether a juvenile court could exercise personal jurisdiction? See State v. Aufderhaar, 2005 WI 108, ¶ 27, 283 Wis. 2d 336, 700 N.W.2d 4.
¶63 It appears that in each of these situations, for the entirety of the case, the circuit court would be "stepp[ing] outside its original jurisdiction" and issuing orders "it ha[s] no authority to make" that would bind the defendant. See majority op., ¶38. Further, the ordinary appeals process will be inadequate because an appeal would always "come[ ] too late" to effectively redress the error. Id., ¶39 (quoted source omitted). The harm to the defendant would be considered irreparable because, for the duration of the case, the defendant would be "completely denied" the "right to be free from the exercise of the court's power." Id., ¶41.
¶64 If there is a principle under which the majority's analysis would not apply to all jurisdictional errors, that principle is well hidden. Such an expansion of the availability of supervisory writs is anathema *850 to the limitations provided in our supervisory writ jurisprudence. A supervisory writ should be a last resort, not a first option.
¶65 In sum, the majority has placed itself in the role of CityDeck's attorneys, relying on arguments not made in order to issue a writ to which CityDeck is not entitled. In doing so, the majority improperly elevates jurisdictional errors as a special class of errors that can always be redressed via a supervisory writ regardless of the specific facts of any particular case. The majority's reasoning is incompatible with Wisconsin's supervisory writ jurisprudence that has consistently described *553 a supervisory writ as an "extraordinary and drastic remedy" reserved for only the most "grievous exigenc[ies]." Kalal, 271 Wis. 2d 633, ¶ 17, 681 N.W.2d 110.
¶66 For the reasons set forth, I respectfully dissent.
¶67 I am authorized to state that SHIRLEY S. ABRAHAMSON joins this dissent.

CityDeck did not supplement its argument in its reply brief.

This is an important distinction that is either lost on, or ignored by, the majority. See, e.g., majority op., ¶39 (characterizing the "damage" in the instant case as "stopping the parties from resolving their dispute in arbitration") (emphasis added).

Although the majority expressly rejects the proposition that jurisdictional errors are treated differently under our writ procedure than non-jurisdictional errors, its analysis belies that assertion. See majority op., ¶27.