Jon Haas and Kenneth Herro,
Plaintiffs-Appellants,

v.

The City of Oconomowoc,
Defendant-Respondent.

Court of Appeals

*Nos. 2015AP1560, 2015AP1956.*
*Submitted on briefs March 17, 2016.*
*—Decided January 25, 2017.*

2017 WI App 10

(Also reported in 892 N.W.2d 324.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Joseph A. Abruzzo* and *Andrew B. Christopherson* of *Lichtsinn & Haensel, S.C.*, Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *John M. Van Lieshout* of *Reinhart Boerner Van Deuren S.C.*, Milwaukee.

Before Neubauer, C.J., Gundrum and Hagedorn, JJ.

¶ 1. GUNDRUM, J. Jon Haas and Kenneth Herro (appellants) appeal from an order dismissing their complaint against the City of Oconomowoc (City) for just compensation for their property (the property) which was taken by eminent domain and also appeal from an order denying their motion for reconsideration.[1] Appellants argue the circuit court erred when it dismissed the action on the basis the City's community development authority (CDA) was the condemnor of the property and appellants "should have . . . named" it as a defendant. Asserting the doctrine of apparent authority applies in this case, appellants contend the City, not the CDA, condemned the property by performing all the necessary steps for condemnation either directly or through the CDA acting as the City's agent. The City counters that the CDA was the condemnor of the property and the court lacked personal jurisdiction

[1] The Honorable Linda M. Van De Water entered the order dismissing the complaint. The Honorable Maria S. Lazar entered the order denying the motion for reconsideration. Because we agree with appellants that the court erred in dismissing the action, we do not address the reconsideration motion. *See Hegwood v. Town of Eagle Zoning Bd. of Appeals*, 2013 WI App 118, ¶ 1 n.1, 351 Wis. 2d 196, 839 N.W.2d 111 (we need not address other issues when one is dispositive).

over the CDA because appellants did not name it as the defendant.

¶ 2. We agree with appellants that the City, not the CDA, condemned the property; thus appellants properly named the City as the condemnor-defendant, and the circuit court erred in dismissing this action. In response to the City's assertion that the court lacked personal jurisdiction over the CDA, we also point out that appellants have never named, sought redress from, or advocated for jurisdiction over the CDA, and thus the City's contention the court lacked jurisdiction over the CDA goes nowhere. We reverse and remand for further proceedings.

## BACKGROUND

¶ 3. In June 2010, the City requested permission from appellants to conduct an appraisal of the property. Advanced Appraisal, Ltd., completed the appraisal report in August 2010 and opined that the market value of the property was $300,000. In November 2011, appellants and the City discussed the prospect of the City purchasing the property. Between December 2011 and March 2012, the City submitted to appellants three offers to purchase. During that time period, appellants requested that another company, Lauenstein & Associates Commercial Real Estate Appraisers, appraise the property. The City and appellants agreed to split the cost of that appraisal, which was completed in October 2012 and opined the value of the property was $515,000. Southern Wisconsin Appraisal also provided the City with an additional appraisal, in September 2012, which appraisal opined the value of the property was $250,000. In November 2012, appellants met with Oconomowoc Mayor James Daley regarding the Southern Wisconsin appraisal.

740

¶ 4.   On January 15, 2013, the CDA approved a resolution recognizing that "the Common Council of the City . . . is supportive of [the CDA's blight designation to facilitate downtown revitalization] and has determined it to be feasible and in the best interests of the public"; "the City and owners [appellants] have negotiated informally for the purchase of the 'Property' "; and "the owners and City staff have been unable to reach an agreement on the purchase price and the 'Property' must be acquired through condemnation proceedings pursuant to [WIS. STAT. ch.] 32 [2015–16]."[2] The resolution resolved that "the City Attorney and the Executive Director are authorized to commence proceedings pursuant to [WIS. STAT. §] 32.05 including, without limitation, issuing a Jurisdictional Offer for the . . . property"; "the City Attorney and Executive Director are authorized to perform such other acts as necessary to acquire title to the 'Property' according to the terms of [ch.] 32"; and "in the event the Jurisdictional Offer is accepted, the City Attorney shall be requested to close the sale."

¶ 5.   That same day, the City held a regular common council meeting during which the council discussed exercising eminent domain over the property. Minutes from that meeting state in relevant part:

**New Business:**

A. **Consider/act on Binding Arbitration Agreement for [the property]**:   Daley stated that this item is off the agenda because there is no agreement to consider.

---

[2] All references to the Wisconsin Statutes are to the 2015–16 version unless otherwise noted.

**B. Consider/act on Eminent Domain for [the property]**: [City Clerk Diane] Coenen passed out two resolutions that were adopted by the [CDA] earlier this evening; 1) Approving Declaration of Public Necessity and Relocation Order for [the property] and 2) Authorizing Service of a Jurisdictional Offer and making an Award of Damages for the property . . . . Duffy gave a Power Point presentation outlining the timeline of events that had taken place in *the City's attempts to negotiate* a purchase price for the property. Chapman outlined the steps taken to try to negotiate a binding arbitration agreement with the owners . . . . The benefit of [the arbitration] process would have been that *we* would have closed immediately on the property, fewer fees for attorneys and it would have avoided eminent domain. Daley stepped down from his chair . . . [and] discussed that the meaning of eminent domain is for public use of property and that an offer to purchase must be fair market value, which *the City offered.* The owners have always been willing to transfer the property, but *we* are at an impasse on value. Daley returned to his chair . . . . Council had questions and comments regarding any *other* property *that the City took through eminent domain,* the necessity of eminent domain, the timeline, consistency by *the City* in *our* offers to purchase, building being vacant, legal fees for both sides and responsibility for those fees, there is still opportunity for an agreement, appraisal gap, public benefit, budgeted purchase and *strength of [the] City's position. Motion* by [Alderman] Nold *to approve eminent domain for [the property];* second by [Alderman] Allen. *Motion carried* 4–3 . . . .

**Reports and comments from the Mayor**—Daley stated he understands that eminent domain is a hard subject to decide . . . but *the City* has no other option. (Emphasis added.)

¶ 6. The next day, January 16, 2013, the City[3] sent a letter on its letterhead to one of the appellants stating in relevant part:

> The *City* has attempted in good faith to *negotiate the purchase* of the property . . . . At their January 15th 2013 meeting the *City* of Oconomowoc *through* its Community Development Authority *made the determination to acquire the property* . . . pursuant to eminent domain as provided in [Wis. Stat. ch.] 32.

> In connection with our discussions, *the City had obtained an appraisal* through Advanced Appraisal, Ltd to begin *our dialogue* and a copy is enclosed. In addition, at your request *the City obtained a second appraisal* prepared by Southern Wisconsin Appraisal, a copy of which is enclosed. This second appraisal . . . will be used as *the basis for the acquisition process* (*and the jurisdictional offer,* if necessary) as *we* proceed *pursuant to [Wis. Stat. §] 32.05.* The City has received your appraisal prepared by Lauenstein & Associates, which is a right provided to you in the process by [§] 32.05(2)(b). Please submit the invoice for that appraisal *to the City for payment,* pursuant to [§] 32.05(2)(b).

The letter closes with: "Sincerely," followed by "City of Oconomowoc," followed by the signature and then typed name of "Robert K. Duffy," followed by the title "Economic Development Director."

¶ 7. Enclosed with the letter, the City sent the Advanced and Southern Wisconsin appraisals, each of which had a cover sheet and letter indicating it was being provided for and as requested by Duffy as Economic Development Director for the City. The Advanced appraisal cover letter states that the intended use of the report is for "possible City of Oconomowoc purchase." The Southern Wisconsin appraisal cover letter states

[3] *See infra* note 4.

that the appraisal is "intended to assist the City of Oconomowoc with negotiations regarding acquisition of the property in conjunction with [the] planned municipal improvement project . . . . In keeping with your instructions this report was completed as a *narrative appraisal* report." (Emphasis added.) Under "Intended Use of the Appraisal" on page one, the appraisal states:

> The purpose of this appraisal is to estimate compensation due the owner for the acquisition of real property and property rights as indicated above in accordance with the provisions of [WIS. STAT. §] 32.09, which states that compensation shall be based on fair market value. The appraisal is intended for use by employees of the City of Oconomowoc (City) in negotiations and subsequent acquisition of the real estate.

A subsequent paragraph indicates that "this is an eminent domain appraisal" and notes that "the property is being acquired by the City of Oconomowoc."

¶ 8. On February 20, 2013, the CDA provided appellants a jurisdictional offer that states in relevant part, "[T]his document is the Jurisdictional Offer of the Community Development Authority [CDA] of the City of Oconomowoc." The next day Attorney John Van Lieshout signed a lis pendens, which was subsequently recorded with the Waukesha County Register of Deeds. In the first sentence, the lis pendens states: "PLEASE TAKE NOTICE that pursuant to [WIS. STAT. §] 32.05, the *City* of Oconomowoc, *through* its Community Development Authority ("CDA") *has issued and served a Jurisdictional Offer* to/upon the owners of record and the mortgagees of record of the property . . . ." (Emphasis added.)

¶ 9. By letter dated March 12, 2013, appellants rejected "the Jurisdictional Offer of the Community Development Authority of the City of Oconomowoc."

The next day, the CDA issued an "Award of Compensation/Damages," which was recorded on March 15, 2013. The award identified the CDA as the condemnor, stated the CDA had complied with all jurisdictional requirements and appellants had two years to appeal the award, and awarded appellants $305,000 for the taking of the property.

¶ 10. On February 27, 2015, appellants filed suit against the City alleging it failed to pay them just compensation for the taking. The City filed an answer, alleging as affirmative defenses, inter alia, that the complaint "fails to state a claim upon which relief can be granted," appellants "named and served the wrong party as a defendant," and "the Court lacks jurisdiction" for that same reason. The City subsequently moved for dismissal of the complaint, arguing the CDA, not the City, was the condemnor of the property, and the circuit court lacked personal jurisdiction over the CDA because the CDA was not named in the complaint or served. In response, appellants argued the City was the proper defendant because it, either directly or through its agent the CDA, was the only entity that completed all of the conditions precedent to properly exercise a taking of the property.

¶ 11. The circuit court granted the City's motion, stating in part that the CDA was "the one that [was] doing the condemning in this case" and it "should have been named." Appellants filed a motion for reconsideration, which the court denied. Appellants appeal.

## DISCUSSION

¶ 12. Appellants maintain that, contrary to the circuit court's determination, the entity they sued—the City—was the condemnor of the property and therefore

they properly named the City as the defendant in this action. They argue the court's decision "ignore[d] the . . . facts" and erroneously failed to apply the apparent authority doctrine of agency law. In contrast, the City asserts that based on the "abundant facts of record" the circuit court "properly concluded that the CDA, and not the City, was the condemnor in this action"; appellants "sued the wrong party" and should have named the CDA as the defendant; and the court lacked jurisdiction over the CDA.[4] We agree with appellants.

*Appellants properly chose to sue the City*

¶ 13. As indicated earlier and discussed more later, the City's lack-of-personal-jurisdiction contention is nonsensical. Again, the City does not argue that the circuit court lacked personal jurisdiction over *the City*, but argues the court lacked such jurisdiction over the CDA. Nowhere in the complaint or elsewhere in the record, however, have we been able to locate anything suggesting the appellants have ever contended the court has jurisdiction over the CDA or that there is any reason why the court should have such jurisdiction, since appellants are only suing the City. In an effort to make sense of the City's arguments and the circuit court's ruling, we consider the City's motion as asserting that appellants' complaint failed to state a claim upon which relief may be granted, one of the City's affirmative defenses. *See M&I Marshall & Ilsley Bank v. Town of Somers*, 141 Wis. 2d 271, 285, 414 N.W.2d 824 (1987) (holding that appellant "failed to

---

[4] Appellants and the City spar over whether appellants could have properly brought suit against and served the CDA. We need not address this issue because we conclude the City was the condemnor and appellants properly brought suit against it. *See Hegwood*, 351 Wis. 2d 196, ¶ 1 n.1.

state a claim upon which relief may be granted" because it "failed to name the proper party").

¶ 14.   Because the parties submitted and the circuit court considered material outside the pleadings, we review the court's decision as one granting summary judgment to the City. *See Converting/Biophile Labs., Inc. v. Ludlow Composites Corp.*, 2006 WI App 187, ¶ 2, 296 Wis. 2d 273, 722 N.W.2d 633 ("When, on a motion to dismiss, parties present matters outside the pleadings, the motion should be processed as one for summary judgment."). Our review of a circuit court's decision on summary judgment is de novo. *Behrendt v. Gulf Underwriters Ins. Co.*, 2009 WI 71, ¶ 11, 318 Wis. 2d 622, 768 N.W.2d 568. Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.*

¶ 15.   WISCONSIN STAT. ch. 32 governs the power of eminent domain. Among other entities, a municipality, such as the City, and a community development authority, such as the CDA, have the power to condemn property. *See* WIS. STAT. § 32.02(1), (11). As appellants point out, WIS. STAT. § 32.05 provides various steps to be taken by a condemnor:

(1) Appraisals:   "The condemnor shall cause at least one ... appraisal to be made of all property proposed to be acquired" and "provide the owner with a full *narrative appraisal* upon which the jurisdictional offer is based and a copy of any other appraisal [caused to be made by the condemnor]." Sec. 32.05(2)(a), (b) (emphasis added). The owner of the property "may obtain an appraisal by a qualified appraiser of all property proposed to be acquired, and may *submit the reasonable costs of the appraisal to the condemnor for payment.*" Sec. 32.05(2)(b).

(2) Negotiations: "Before making the jurisdictional offer . . ., the condemnor shall attempt to negotiate personally with the owner . . . for the purchase of the [property]. Sec. 32.05(2a).

(3) Jurisdictional Offer: "Condemnor shall send to the owner . . . a notice" called a "jurisdictional offer," which, inter alia, identifies the property and the project, and states the amount of compensation offered. Sec. 32.05(3), (4).

(4) Lis Pendens: "The condemnor shall file a lis pendens on or within 14 days of the date of service . . . of the jurisdictional offer" and "[t]he lis pendens shall include a copy of the jurisdictional offer." Sec. 32.05(4).

(5) Award of Damages: If the property owner does not accept the jurisdictional offer, "the condemnor may make an award of damages," which, among other things, "shall name the condemnor . . . and state that the condemnor has complied with all jurisdictional requirements." Sec. 32.05(7).

¶ 16. The record demonstrates that in this particular condemnation process the City completed the first two steps directly. Related to the first step, the City caused appraisals—"narrative appraisals," in conformity with WIS. STAT. § 32.05(2)(b)—to be made of the property, and by letter dated January 16, 2013, provided appellants with copies of those appraisals and invited appellants to "submit the invoice for [appellants' own appraisal prepared by Lauenstein] to the City for payment, pursuant to [§] 32.05(2)(b)." In that letter, the City informed appellants the second appraisal, by Southern Wisconsin, would "be used as the basis for the acquisition process (and the jurisdictional offer, if necessary) as we proceed pursuant to [§] *32.05.*" (Emphasis added.) As reflected in that letter, the minutes of the January 15, 2013 city council

748

meeting, and the CDA resolution of January 15, 2013, the City also attempted to negotiate with the owners for purchase of the property, the second step.[5] Other undisputed facts of record also demonstrate this: in

[5] Remarkably, in its response brief, the City states: "On January 16, 2013, *the CDA* provided two (2) appraisals to Plaintiffs-Appellants," citing to paragraph two in the affidavit of Van Lieshout. (Emphasis added.) Paragraphs two and three of that affidavit state in relevant part:

> 2. On January 16, 2013, *the Community Development Authority of the City (the "CDA")* notified the plaintiffs that it intended to acquire the property owned by the plaintiffs . . . by eminent domain. In that letter, the plaintiffs were provided with copies of appraisals by *the CDA,* as required by law. The plaintiffs were also informed that if they submitted an invoice for their appraisal, that it would be paid. Subsequently, the plaintiffs submitted an invoice, and the invoice for the plaintiffs' appraisal was paid, as required by statute.

> 3. After the letter of January 16, 2013 was issued by *the CDA,* the CDA and the plaintiffs engaged in negotiations, as required by law. For example, on the day that the January 16, 2013 letter was issued, the attorney for the plaintiffs, Joseph Abruzzo, e-mailed me to discuss the parameters of an arbitration agreement whereby the parties would submit to arbitration the resolution of the gap between the valuation of the property in the plaintiffs' appraisal ($515,000) and the valuation of the property in *the CDA's* appraisal ($250,000). A true and correct copy of that e-mail correspondence is attached hereto and incorporated herein by reference as Exhibit A. (Emphasis added.)

As readily observed by review of the January 16, 2013 letter referenced above, *see supra* ¶¶ 6, 7, the City's material representation in its response brief and Van Lieshout's affidavit that *the CDA* sent the January 16, 2013 letter, with appraisals by *the CDA,* can only be characterized as disingenuous—at best. Every indication in the January 16, 2013 letter is that it was *the City,* not the CDA, that "issued" the letter, provided the appraisals to appellants, and informed appellants they could submit their appraisal invoice, as the letter states, "to the City for payment." In addition, the appraisals by Advanced and Southern Wisconsin themselves

749

November 2011 appellants and the City discussed the prospect of the City purchasing the property; between December 2011 and March 2012, the City submitted to appellants three offers to purchase; and in November 2012, appellants met with the mayor of the City regarding the Southern Wisconsin appraisal.

¶ 17. The CDA provided appellants with the jurisdictional offer, the third step. The next day, however, Attorney Van Lieshout signed a lis pendens, which was recorded a few days thereafter—the fourth step—specifically stating "the City" "through its [CDA]" had issued and served the jurisdictional offer on appellants. The CDA directly performed the fifth step, making an award of damages.

¶ 18. As appellants point out, neither the City nor the CDA directly performed all five of these steps, which the statutes indicate are to be performed by the "condemnor." No party suggests the City was acting as an agent for the CDA. Yet, the property was successfully taken from appellants, requiring just compensation. The record shows the City was the condemnor of the property. As such, it directly performed two of the statutory steps for condemnation and performed the remaining steps, as intimated in the January 16, 2013 letter from the City and the lis pendens, "through" the CDA.

---

identify they were done for the City, not the CDA. *See supra* ¶ 7. Furthermore, the City does not identify, nor are we able to find, anything in the "Exhibit A" e-mail correspondence attached to Van Lieshout's affidavit that identifies that Van Lieshout was representing the CDA, much less *only* the CDA, in those e-mails, as opposed to representing the City directly or the City through the CDA. Indeed, throughout the e-mails, Van Lieshout repeatedly references his "client" but we are unable to find any clarification in those e-mails as to whether his client is the City, the CDA, or both.

¶ 19. As appellants argue, the City was only able to accomplish those steps which were directly performed by the CDA because the CDA had the apparent authority to act on behalf of the City. In its response brief, the City makes no argument disputing appellants' developed contention in their brief-in-chief that the apparent authority doctrine is applicable to this case. Instead, the City merely asserts the CDA is a "separate body politic" that had the power to condemn on its own, a point appellants do not dispute. But that assertion by the City fails to answer whether the CDA *was* the condemnor. By failing to respond to appellants' apparent authority argument, we could readily conclude the City concedes the CDA was acting on its behalf under that doctrine. Nonetheless, a review of the law and the record is appropriate.

¶ 20. For liability to exist under the doctrine of apparent authority, three elements must be met: "(1) Acts by the agent or principal justifying belief in the agency; (2) knowledge thereof by the party sought to be held [here, the City]; (3) reliance thereon by the plaintiff, consistent with ordinary care and prudence." *Pamperin v. Trinity Mem'l Hosp.*, 144 Wis. 2d 188, 203, 423 N.W.2d 848 (1988) (citation omitted). The record demonstrates the CDA was acting with the apparent authority of the City and thus was acting as the City's agent.

¶ 21. As to the first element, at their respective meetings on January 15, 2013, the CDA and the common council for the City each considered the City's efforts to acquire appellants' property, which efforts were unsuccessful as of that date due to the City and appellants' inability to agree on a purchase price. Both bodies determined condemnation of the property was

necessary. The minutes from the common council meeting show that the "Council had questions and comments regarding any *other* property that *the City took through eminent domain*," and the mayor stated he "understands that eminent domain is a hard subject to decide . . . but *the City* has no other option." (Emphasis added.) The council voted in favor of a motion to approve eminent domain for the property.

¶ 22. The next day, Duffy, who, according to the record appears to have served as Economic Development Director for the City *and* Executive Director for the CDA during the relevant time period, sent a letter to appellants indicating "the City" "through its [CDA]" "made the determination to acquire the property" pursuant to eminent domain. As discussed, the letter sets forth various steps in the condemnation process which the City had performed—steps that WIS. STAT. § 32.05 states are to be done by the condemnor. And as noted, the letter further indicates the Southern Wisconsin appraisal the City included with the letter would be "used as the basis for the acquisition process" and "the jurisdictional offer, if necessary," as "*we* proceed pursuant to [§] 32.05." (Emphasis added.) Duffy was clearly wearing his City employee hat in sending that letter, in that it was sent on City letterhead and was signed "Sincerely, City of Oconomowoc, Robert K. Duffy, Economic Development Director."

¶ 23. Approximately one month later, the CDA provided appellants a jurisdictional offer. The next day, however, Van Lieshout, who avers in an affidavit that the City is his client but also avers his client "was and is" the CDA, signed the required lis pendens stating that "the City . . ., through its [CDA] has issued and served a Jurisdictional Offer to/upon" appellants. The

752

CDA subsequently issued appellants an "Award of Compensation/Damages" identifying it as the condemnor.

¶ 24. In light of the City's substantial efforts to acquire the property, the years of communication between appellants and the City regarding the City's desire to acquire it, and the City's and the CDA's 2013 actions described above, any reasonable person in the position of appellants would have been entirely justified in believing the CDA's actions toward condemnation of the property were being done as an agent for the City.

¶ 25. The second apparent authority element is not at issue in this case because the City's acts themselves justified appellants' belief in the agency. *See Pamperin*, 144 Wis. 2d at 208, 210–11 (where it is the acts of the principal which justify a third party's belief that an agency relationship existed, the second element is not at issue). The third element—"reliance . . . by the plaintiff [on the acts of the agent or principal that justify belief in the agency], consistent with ordinary care and prudence"—is satisfied, as appellants reasonably chose to file suit against the City, which was the only entity that could have been considered to have fulfilled the statutory requirements for condemnation.

¶ 26. The City contends appellants' March 12, 2013 letter stating appellants were rejecting the jurisdictional offer "of the [CDA]" and the March 15, 2013 "Award of Compensation/Damages," which names the CDA as the condemnor, show that the CDA was the entity that condemned the property. By the time those documents were issued, however, the actions of the City and the CDA had already clearly established that the City was the entity condemning the property and any actions by the CDA were being done on behalf of the City.

753

¶ 27. "Issues of personal jurisdiction are questions of law which we review de novo." *Kohler Co. v. Wixen*, 204 Wis. 2d 327, 334, 555 N.W.2d 640 (Ct. App. 1996). In this case, the City does not argue the circuit court lacked jurisdiction over *the City*. Instead, it contends the CDA, not the City, was the condemnor of the property, appellants should have named the CDA as the defendant, and because they did not do so, the circuit court lacked jurisdiction over the CDA. Appellants, however, do not contend the circuit court had jurisdiction over the CDA. Appellants named and served *the City* as the defendant in this action. As the City itself points out, appellants' complaint never mentions the CDA; rather, the complaint clearly identifies appellants' position that the City is the entity that condemned the property and is the entity from which they are seeking redress.

¶ 28. The cases the City relies upon for its personal jurisdiction argument, *Johnson v. Cintas Corp. No. 2*, 2012 WI 31, 339 Wis. 2d 493, 811 N.W.2d 756, *Hoops Enters. III, LLC v. Super W., Inc.*, 2013 WI App 7, 345 Wis. 2d 733, 827 N.W.2d 120 (2012), and *Bulik v. Arrow Realty, Inc.*, 148 Wis. 2d 441, 434 N.W.2d 853 (Ct. App. 1988), provide it no assistance. In both *Johnson* and *Bulik*, the circuit court determined it lacked personal jurisdiction *over the entity from which the plaintiff sought redress* because *that entity* had not been named as a party in the summons and complaint. *See Johnson*, 339 Wis. 2d 493, ¶ 50; *Bulik*, 148 Wis. 2d at 446–47. And with regard to *Hoops*, the City writes that in that case we "cited *Johnson* for the proposition that service of a summons and complaint on the State that named

the State, but not the DOT, does not confer jurisdiction on the DOT . . . . [Here,] service of a summons and complaint upon [the City] does not confer jurisdiction on . . . the CDA." These cases might be relevant if appellants were attempting to sue, seek redress from, or assert the circuit court had jurisdiction over the CDA, but they are not. Here appellants have named only the City as a defendant in the summons and complaint, have served those documents on the City, and are seeking redress from the City, not the CDA. The City's contention that the circuit court lacked jurisdiction over the CDA goes nowhere. And because the City makes no argument—and we see none that properly could be made—that the circuit court lacked jurisdiction over *the City*,[6] the court erred as a matter of law in granting the motion to dismiss appellants' complaint against the City on the apparent ground of lack of personal jurisdiction.

## CONCLUSION

¶ 29. Based on the foregoing, we conclude the City condemned the property and was properly named as the defendant in this case, and the City's challenge on jurisdictional grounds is meritless. The circuit court's order dismissing the complaint is reversed and this case is remanded for further proceedings.

*By the Court.*—Order reversed and cause remanded for further proceedings.

---

[6] Indeed, the City acknowledges it was "properly served."