**COURT OF APPEALS
DECISION
DATED AND FILED**

**June 30, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2018AP2265**

**STATE OF WISCONSIN**

Cir. Ct. No. 2015CV481

**IN COURT OF APPEALS
DISTRICT III**

SKYLER B. EWING,

    PLAINTIFF-APPELLANT,

  V.

STATE AUTOMOBILE INSURANCE COMPANY AND HORACE MANN
PROPERTY & CASUALTY INSURANCE COMPANY,

    DEFENDANTS,

JONATHAN G. DAVIS, JR.,

    DEFENDANT-RESPONDENT.

APPEAL from a judgment of the circuit court for Marathon County: GREGORY J. STRASSER, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

¶1 HRUZ, J. Skyler Ewing appeals a summary judgment dismissing defendant Jonathan Davis from Ewing's personal injury action for lack of personal jurisdiction over Davis. Ewing argues he accomplished personal service because the undisputed facts show his process server attended a baseball game in California in which Davis was to play. Prior to the game, as Davis was exiting the field down the right field line to retrieve items from the clubhouse, the process server tossed a manilla envelope containing the summons and complaint down at Davis from approximately twenty feet above him in the fan seating area. As the server did so, he yelled, "You have been served!"

¶2 We agree with the circuit court that this attempt at personal service was insufficient. Process papers should be physically placed in the hands of the party to be served, if possible. If a person refuses to accept service after the process server identifies the documents and attempts service in a "civil and proper manner," the documents may be deposited in an appropriate place in the presence of the party or in a place where they will most likely come into his or her possession. *See **Borden v. Borden***, 63 Wis. 374, 377, 23 N.W. 573 (1885). Because personal service was not accomplished upon Davis, the court lacked personal jurisdiction over Davis, and the complaint against him was properly dismissed. We affirm.

## BACKGROUND

¶3 This case arises out of a car accident that occurred in Marathon County in 2012. Davis, the driver, allegedly attempted to pass another vehicle in a no-passing zone and lost control of the car.[1] Ewing, a passenger in the same car as

---

[1] Davis did not own the vehicle he was driving.

Davis, was allegedly injured in the accident. He filed the present lawsuit in Marathon County on July 2, 2015.

¶4 Ewing subsequently filed an affidavit of service from "C. Smith," a California process server. Smith averred that Davis, who was at the time a minor league baseball player, had been personally served with a copy of the summons and complaint on July 23, 2015, in Lancaster, California. Smith further averred that the location where service was accomplished was the home stadium of the minor league Lancaster JetHawks.

¶5 The facts regarding the service attempt are undisputed. On July 23, Davis was going through his "normal routine" to get ready for that day's baseball game. He went to the dugout, then ran out near the right field line to do some stretching and warm ups. There were fans in the seating area seeking players' photographs and autographs, and Davis heard a man yelling at him angrily from that area, which Davis was not facing. Davis could not hear exactly what the man was saying because of the crowd noise. That day was the first time Davis had ever seen the man.

¶6 Davis realized he had forgotten his batting gloves in the clubhouse and went to retrieve them. The stadium was built such that the clubhouse was located outside the stadium, and players had to exit the field down the right field line to get to the clubhouse. As Davis was leaving the field, the man "met [him] at the railing," threw a manilla envelope down at him, and told Davis he had been served. Davis estimated the man was approximately twenty feet above him in the stands when he tossed the envelope.

¶7 Davis did not pick up the envelope from the field. At no point did the man identify the contents of the envelope. Prior to the game, one of Davis's

3

coaches picked up the envelope, noticed it was addressed to Davis, and delivered it to him in the clubhouse. Davis then opened the envelope and learned for the first time of the present lawsuit. Davis had not authorized the coach or any other staff to accept service of process on his behalf. The process server stayed for the remainder of the baseball game, but he did not identify himself or provide any further information to Davis regarding the summons and complaint.

¶8      Davis alleged insufficient service of process both as an affirmative defense in his answer and in a summary judgment motion he filed in 2018. Davis was deposed and also filed an affidavit in which he discussed the July 23, 2015 service attempt.[2] Ewing filed his own motion seeking a declaration that the personal service upon Davis was sufficient. Following a hearing, the circuit court issued a written decision containing findings of fact and its analysis. It then entered an order granting the summary judgment motion and dismissing Davis from the lawsuit. Ewing now appeals.

---

[2] Ewing maintains that Davis's account of the service attempt in his affidavit "paints a different picture" than the account he offered during his deposition, perhaps in an attempt to either obtain a favorable summary judgment ruling or have this court conclude there are genuine issues of material fact that would preclude summary judgment. Specifically, Ewing's brief characterizes Davis's affidavit as asserting "that the commotion and noise of the crowd made it difficult for him to understand what was happening at the time he was served." However, Davis never made any such representation in his affidavit—and even if he had, it would have been consistent with his statement during the deposition that, initially, he could not hear precisely what the man was yelling at him.

To be sure, Davis's affidavit elaborates upon the facts he provided during his brief questioning at his deposition regarding the service attempt, particularly by stating what happened after the manilla envelope was left on the field. However, we do not perceive any material conflict of the nature Ewing suggests between Davis's descriptions of the service attempt. Moreover, we do not perceive any basis to declare—and Ewing does not argue on appeal—that the affidavit was "sham," as Ewing accused during the motion hearing.

## DISCUSSION

¶9 We review a grant of summary judgment de novo. *Lang v. Lions Club of Cudahy Wis., Inc.*, 2020 WI 25, ¶18, 390 Wis. 2d 627, 939 N.W.2d 582. We use the same methodology as the circuit court during our review. *Piper v. Jones Dairy Farm*, 2020 WI 28, ¶12, 390 Wis. 2d 762, 940 N.W.2d 701. Summary judgment shall be granted where the record demonstrates there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Id.*; *see also* WIS. STAT. § 802.08(2) (2017-18).[3] Although summary judgment is considered a "drastic remedy," a summary judgment motion should be granted in those instances where the controlling facts are not in dispute and the application of the law to those facts is clear. *Town Bank v. City Real Estate Dev., LLC*, 2010 WI 134, ¶31, 330 Wis. 2d 340, 793 N.W.2d 476.

¶10 Ewing argues "the undisputed facts showed that Davis was personally served on July 23, 2015." Ewing jumps immediately to authority from other jurisdictions without first discussing the necessity of, and requirements for, personal service under Wisconsin law. We briefly address these matters before considering Ewing's argument that personal service was accomplished here as a matter of law.

¶11 The United States Constitution requires that a court have personal jurisdiction over a defendant to render a judgment in a civil suit. *Johnson v. Cintas Corp. No. 2*, 2011 WI App 5, ¶9, 331 Wis. 2d 51, 794 N.W.2d 475 (2010), *aff'd*, 2012 WI 31, 339 Wis. 2d 493, 811 N.W.2d 756. A circuit court may

---

[3] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

exercise personal jurisdiction over a defendant by service of a summons as provided in WIS. STAT. § 801.11. The service of a summons is also a necessary prerequisite to validly commencing an action. *See* WIS. STAT. § 801.02(1).

¶12 The summons provides notice to the defendant that an action has been commenced against him or her. *Johnson*, 339 Wis. 2d 493, ¶24. Notice of the pendency of the action, which provides the defendant the opportunity to respond to the lawsuit and present objections, is an elementary and fundamental requirement of due process. *Id.* (citing *Mullane v. Central Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)). Given that a defendant's constitutional due process rights are at stake, "Wisconsin requires strict compliance with its rules of statutory service, even though the consequences may appear to be harsh." *Id.*, ¶25 (citing *American Family Mut. Ins. Co. v. Royal Ins. Co. of Am.*, 167 Wis. 2d 524, 531, 481 N.W.2d 629 (1992)).

¶13 The relevant rule of service here is WIS. STAT. § 801.11(1)(a), which provides that personal jurisdiction may be obtained "[b]y personally serving the summons upon the defendant either within or without this state."[4] A defendant's actual notice of an action is not enough to confer personal jurisdiction; service must be made in the manner prescribed by statute. *Johnson*, 339 Wis. 2d 493, ¶25. The failure to properly serve a defendant is usually regarded as a fundamental defect that is fatal to the action regardless of prejudice. *Bergstrom v. Polk Cty.*, 2011 WI App 20, ¶12, 331 Wis. 2d 678, 795 N.W.2d 482. In general, the party invoking the judicial process in his or her favor bears the burden of

---

[4] Although alternative forms of service are not at issue in this case, we note that if personal service cannot be accomplished with reasonable diligence, WIS. STAT. § 801.11(1) allows for substituted service or, should that fail, for service by publication and mailing.

production and persuasion on the issue of whether the court obtained personal jurisdiction. *See **Richards v. First Union Sec., Inc.***, 2006 WI 55, ¶¶17, 27, 290 Wis. 2d 620, 714 N.W.2d 913.

¶14     Ewing argues authority from other jurisdictions establishes a general rule "that personal service is accomplished if the process server and the defendant are within speaking distance of each other, and such action is taken as to convince a reasonable person that personal service is being attempted." *See, e.g.*, ***In re Ball***, 38 P.2d 411, 412 (Cal. Dist. Ct. App. 1934).  In Ewing's view, personal service was accomplished because Davis admitted he both saw the papers thrown down at him on the field (or at least the envelope containing them) and heard the process server from the stands say he had been served.  Ewing maintains that Davis was attempting to evade service, and he argues "service cannot be avoided by physically refusing to accept the summons."

¶15     In support of his argument, Ewing invokes ***Borden***, which he believes stands for the proposition that "personal service can be effective, even if the person being served does not directly receive the summons."  In ***Borden***, the process server, McKnight, went to the defendant's home.  ***Borden***, 63 Wis. at 376. The defendant answered the door and saw the summons in McKnight's hand, and McKnight told the defendant he had a summons that he was going to serve. ***Id.*** The defendant refused to let him make service and pushed McKnight out of the door. ***Id.***  McKnight then told the defendant he would leave a copy of the summons for him and attached it to the door, telling the defendant what he had done. ***Id.***

¶16     Unlike this case, ***Borden*** involved a clear-cut effort by the defendant to avoid service of process.  Our supreme court, in upholding the validity of the

service attempt, observed that a process server cannot physically compel a defendant to accept the papers offered to him or her. *Id.* at 377. Rather,

> when a party refuses to accept a copy of a summons which is offered him [or her] in a civil and proper manner, after being informed what the paper is, there is no other way to make service but deposit the process in some appropriate place, in the presence of the party if possible, or where it will be most likely to come to his [or her] possession. If then the party to be served does not get the copy of the summons it will be entirely owing to his [or her] own fault.

*Id.* We have since applied this rule in circumstances where the person upon whom service is attempted would not emerge from a bedroom to accept the documents, and the server left the papers outside the bedroom door. *K.N.K. v. Buhler*, 139 Wis. 2d 190, 215-16, 407 N.W.2d 281 (Ct. App. 1987).

¶17 We take this opportunity to clarify that, under existing case law, the papers effecting service of process should be physically placed in the hands of the party to be served, if possible. This approach is the preferred manner under WIS. STAT. § 801.11(1)(a), which speaks of "personally serving the summons upon the defendant." If the summons is presented to the person in a "civil and proper manner," and if, after informing the defendant of what the document is, the defendant's obstinacy makes it impossible to physically hand the document to him or her, service may be accomplished under *Borden* by depositing the process papers in an appropriate place in the presence of the party or in a place where they will most likely come into his or her possession. *See Borden*, 63 Wis. at 377.

¶18 Here, the question remains whether Davis was being obstinate or otherwise improperly avoiding service. Plainly, he was not, and the entirety of Ewing's arguments falters under this basic fact. The service attempt—which apparently was the only attempt made on Davis regarding this lawsuit—was made

8

at a ballpark with many spectators in attendance, some of whom were seeking autographs or photographs from players. Davis could hear an unknown man yelling at him from the stands but was unable to hear specifically what the man was saying. As Davis was walking off the field, the man tossed a manilla envelope down at him from the stands twenty feet above, and Davis heard the man yell that he had been served. Ewing submits that any "reasonable person, or anyone who has ever seen a legal procedural television program," would understand that they were being served with legal papers when someone yells "you've been served" and then attempts to give them papers. We disagree.

¶19    Ewing misconstrues several facts in making this argument. First, he confuses the sequencing; according to the undisputed facts, Davis was only told he had been served after the process server tossed the envelope onto the field. There is no evidence the process server ever identified himself or the contents of the envelope prior to tossing it at Davis. The absence of such evidence brings this case outside the realm of *Borden*. Although Ewing contends Davis "was aware that the process server had papers to serve," the undisputed facts show otherwise.

¶20    Second, aside from the process server's failure to identify himself or the contents of the envelope he carried, there was no effort made to physically hand the papers to Davis. Davis had no reasonable opportunity to decline service because he was confronted with a man amongst a crowd of fans and autograph-seekers who casually tossed an envelope down at him from a height of twenty feet. This approach is hardly the "civil and proper manner" for service contemplated by *Borden*. Under the circumstances here, Davis was under no obligation to pick up the tossed envelope to discover its contents.

¶21 Third, Ewing argues that Davis "kept himself in a physically removed area from the process server, thanks to the railings that separated spectators from the baseball field, in order to avoid service." The absurdity of this argument is evident on its face. The choice of the location to attempt service was not Davis's but that of the process server. Davis was a professional baseball player and was merely present at his place of employment, one which is known to separate the general public from the playing field. Rather than attempt to serve Davis at his home or as he entered or exited the ballpark, the process server chose to attend the baseball game and attempt service from the fan section of the stadium. The railing located between Davis and the process server was a function of the server's choice to attempt service upon Davis from the crowd, not an obstacle to service affirmatively placed by Davis.

¶22 Even the primary case on which Ewing relies, *In re Ball*, is materially distinguishable from this case. In *Ball*, the defendant had previously been served with legal papers from the same process server, who attempted to serve similar documents pertaining to a new proceeding. *Ball*, 38 P.2d at 411. When the process server was within about twelve feet of the defendant, he said, "I have here another one of those things for you." *Id.* The defendant responded, "You have nothing for me," and he started to walk away, at which point the server handed the papers to, or tossed them at, the defendant and said, "Now you are served." *Id.* The papers landed a few feet from the defendant, but he did not pick them up and continued to walk away.

¶23 Unlike Davis, the defendant in *Ball* knew the process server and was informed of the nature of the documents the server had to deliver. More importantly, the process server had made a reasonable attempt to physically place the papers in the defendant's hands, an attempt that was never made in the instant

10

case. The defendant in *Ball*, by his statements and conduct, made clear that he would not accept service. Davis made no such statements or evasive movements here. Davis simply did not pick up an envelope thrown down at him from a stranger in the stands.

¶24 In short, we reject Ewing's proposed "speaking distance and tossing" rule. Such a rule is inconsistent with existing Wisconsin law, as well as being impractical and unreasonable. These concerns are particularly acute when, as here, there is no support for the notion that the defendant ever acted so as to evade or obstruct a proper attempt at service of process. Because the service attempt here was insufficient under WIS. STAT. § 801.11(1)(a), the circuit court lacked personal jurisdiction over Davis, and the action was properly dismissed upon summary judgment.

*By the Court.*—Judgment affirmed.

Not recommended for publication in the official reports.